NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0180-18T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JUAN RODRIGUEZ,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

May 3, 2019

APPELLATE DIVISION

Argued April 8, 2019 – Decided May 3, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 18-04-0195.

Paul H. Heinzel, Assistant Prosecutor, argued the cause for appellant (Michael H. Robertson, Somerset County Prosecutor, attorney; Paul H. Heinzel and Alexander C. Mech, Assistant Prosecutor, of counsel and on the briefs).

John P. Morris argued the cause for respondent.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for amicus curiae Office of the Public Defender (Joseph E. Krakora, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).

Jane C. Schuster, Deputy Attorney General, argued the cause for amicus curiae Attorney General (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In State v. Witt, 223 N.J. 409, 415 (2015), the Supreme Court revised the standards under New Jersey law governing police searches of motor vehicles that have been lawfully stopped at the roadside. The Court held such nonconsensual roadside searches may be conducted without a warrant if: (1) the police have probable cause to believe the vehicle contains evidence of criminal activity; and (2) the situation arose from unforeseeable and spontaneous circumstances. Id. at 446-48.

In the present roadside search case, the trial court suppressed bags of marijuana and other incriminating evidence police officers found within a vehicle driven by defendant, which they had stopped for traffic violations. The court construed Witt to disallow a warrantless on-the-spot roadside search where the police at the scene have sufficient grounds to have the vehicle towed away and impounded. The court ruled the police in such circumstances, absent valid consent, need to obtain a warrant in order to search the vehicle's interior.

We reverse the suppression order. We hold the police officers were not required to impound defendant's vehicle in order to search it under the

circumstances presented. The officers had the discretion to proceed instead with a warrantless roadside search, because the two critical elements of <u>Witt</u>, i.e., probable cause and spontaneity, were satisfied. In addition, there was no unreasonable delay in the officers making their decision to proceed with the search at the scene.

I.

A.

The State has charged defendant Juan Rodriguez in a one-count indictment with first-degree possession of a controlled dangerous substance, namely marijuana in a quantity of at least twenty-five pounds, with the intent to manufacture, distribute, or dispense it, N.J.S.A. 2C:35-5(a)(1) and -5(b)(10)(a). As we will explain in more detail, the bags of marijuana and other contraband were seized during a roadside stop without a warrant from a vehicle that defendant had been driving.

Defendant moved to suppress the seized items. The trial court conducted a suppression hearing at which one of the police officers who had been involved in the search testified. The court was also provided with the motor vehicle recordings ("MVRs") from two squad cars of responding police officers, which filmed portions of the events. The court also reviewed

transcripts of the audio portions of the MVRs and several photographs and documents.

B.

The pertinent facts that emerged at the suppression hearing were substantially undisputed by the parties.

On January 1, 2018, Police Officer Kevin Olah of Warren Township was in a marked patrol vehicle at a gas station on Martinsville Road in Basking Ridge. At approximately 2:07 a.m., Officer Olah observed a white Jeep Grand Cherokee with an Alabama license plate drive past. He noticed the Jeep's passenger-side headlight was out. He thereafter observed several air fresheners hanging from the rearview mirror, in violation of the traffic laws.

Olah followed the Jeep on Liberty Corner Road. As the Jeep took the eastbound entrance ramp for Interstate 78, Olah initiated a motor vehicle stop. A few minutes later, Police Officer Thomas Clarke arrived at the scene to assist.

Olah approached the passenger side of the vehicle and began speaking with the driver, the Jeep's sole occupant. The driver presented a California driver's license that identified him as Juan Rodriguez. Olah smelled the odor of raw marijuana emanating from the Jeep. He also noticed several small pieces of marijuana on the front passenger seat. Defendant told Olah that he

did not own the vehicle. He claimed he had borrowed the Jeep from a friend earlier that evening, and was on his way back from Pennsylvania, where he had gone to see a woman.

Olah returned to his patrol car and conducted a computer check on defendant. The check revealed that defendant's driver's license was suspended. Olah approached the Jeep again and spoke with defendant about the odor of marijuana. Defendant told the officer that others might have smoked marijuana in the Jeep earlier that day.

Olah then instructed defendant to get out of the Jeep. He searched defendant, but found nothing of evidential value. The officer then presented defendant with a standard consent-to-search form and read it to him. Defendant denied consent. Defendant then signed the form and acknowledged his denial.

Although defendant was not yet arrested, he sat in the back of a patrol car while Officers Olah and Clarke searched the Jeep. Olah found approximately $5,600 in one-hundred dollar bills between the center console and the dashboard and $4,920 in twenty-dollar bills in the center console. Olah also discovered $15,000 in Western Union money order receipts in the center console.

According to Olah, the odor of marijuana became stronger as he moved toward the Jeep's rear cargo area. He accordingly searched that cargo area, which was contiguous with and not separate from the passenger area. There Olah spotted and seized a large, brown cardboard box, which he described as emanating an "overwhelming" odor of raw marijuana.

Olah asked defendant if the box was his, which defendant denied. Defendant claimed he did not know what was inside of the box and that it had already been in the Jeep when he borrowed it from his friend. At this point, another police officer arrived on the scene to provide additional backup.

Olah opened the box, which was taped and glued shut. Inside the box, Olah discovered twenty-seven plastic bags. Each bag had approximately one pound of what was suspected to be marijuana. Defendant was then placed under arrest.

The motion judge noted that the police report documented a tow dispatch at 2:42:58 a.m., less than a minute after defendant's arrest at 2:42:02 a.m. The police photographed the scene, and an officer remained with the Jeep until a tow truck arrived. All of the evidence was secured in the Jeep during the tow to the police headquarters. Officer Clarke followed closely behind the tow truck with his MVR activated, so as to ensure the security of the contraband and to document the contraband's chain of custody.

The tow truck parked the Jeep at police headquarters. Officer Olah removed the evidence from the Jeep and took it into headquarters. The tow truck took the Jeep to the towing lot, and Olah completed an impound report.[1]

Olah then field tested the contents of one of the bags, and the test yielded a positive result for marijuana. All told, the twenty-seven bags contained approximately twenty-eight pounds of marijuana.

Defendant was escorted to the processing room at the police station. A search of his person yielded $220 in cash. At approximately 3:31 a.m., Olah issued defendant Miranda[2] warnings. Defendant initialed and signed the Miranda form, but invoked his right to remain silent.

Officer Olah and a police detective counted and took photographs of all of the recovered currency. The cash totaled $10,740. The Western Union money order receipts totaling $15,000 were also photographed and logged into evidence.

## C.

Upon considering these events, the trial court issued an order and written opinion on July 27, 2018, granting defendant's motion to suppress the drugs

---

[1] Defendant does not contend any break in the chain of custody of the seized items.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

and other contraband seized in the roadside stop. The court found the motor vehicle stop itself was justified, as defendant conceded. However, the court ruled the police needed a warrant in order to search the Jeep under the circumstances presented.

Specifically, the trial court rejected the State's reliance upon the automobile exception to the constitutional warrant requirement. The court accepted defendant's contention that, as the situation unfolded at the roadside, it was clear that the Jeep was going to be towed and impounded. The court noted in this regard that defendant lacked a valid driver's license, was secured in the back of a police car, and "the registered owner of the vehicle was not available or on sight." The court found "there was no indication to believe that the [Jeep] or its contents would be subject to being removed, tampered with, or otherwise disturbed before a warrant could be obtained." In addition, defendant had declined to give his consent to a search of the Jeep.

Given these circumstances, the trial court found no exigency present that could justify an immediate warrantless search of the Jeep's interior. Instead, the court's opinion signifies that the police should have impounded the Jeep and procured a warrant in order to search it.

8

D.

The prosecution moved for leave to appeal the suppression ruling, which this court granted. At our invitation, the Attorney General filed an amicus brief in further support of the prosecutor's arguments, while the Office of the Public Defender filed an amicus brief supporting private defense counsel's opposition.[3]

The State argues the trial court strayed from the tenets of Witt in requiring the police to demonstrate exigency in order to justify a warrantless roadside search in a situation where, as here, the police spontaneously have probable cause to believe a vehicle contains evidence of criminal activity. The defense lawyers counter that Witt does not permit the police to violate a motorist's privacy interests by conducting a warrantless nonconsensual roadside search of a vehicle that clearly is going to be impounded.

II.

As the trial court appropriately recognized, the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution limit the ability of government officials to search private property without a search warrant. Warrantless searches and seizures are presumptively

---

[3] We express our appreciation to the Attorney General and the Office of the Public Defender for their thoughtful submissions and their helpful participation in the appellate oral argument.

invalid unless the State shows the search was justified under one of the specific judicially recognized exceptions to the warrant requirement. State v. Pineiro, 181 N.J. 13, 19 (2004); State v. Maryland, 167 N.J. 471, 482 (2001); see also Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

As we have noted, the State has invoked in this case what is known as the "automobile exception" to the warrant requirement.[4] The exception derives from a longstanding judicial recognition of: (1) the inherent mobility of motor vehicles; (2) the generally diminished expectation of privacy in a vehicle as compared with a home; and (3) the practical reality that the "intrusion occasioned by a prompt search based on probable cause is not necessarily greater than a prolonged detention of the vehicle and its occupants while the police secure a warrant." Witt, 223 N.J. at 422-23.

Our Supreme Court in Witt announced in 2015 a sharp departure from a more narrow construction of the automobile exception the Court had previously adopted in State v. Pena-Flores, 198 N.J. 6 (2009), and in State v. Cooke, 163 N.J. 657 (2000). Under those earlier formulations, the police needed to have exigent circumstances to conduct a warrantless, nonconsensual

---

[4] We do not consider, and the State has not advanced on appeal, other hypothetical exceptions to the warrant requirement the State did not invoke in the trial court, such as the "inevitable discovery" doctrine. See State v. Robinson, 200 N.J. 1, 20 (2009) (disfavoring appellate reliance on arguments not raised below).

roadside search of a vehicle. In <u>Pena-Flores</u>, the Court expressed a multi-factor test to evaluate whether such exigent circumstances were present, including such factors as the time of day, the location of the stop, the ratio of police officers to suspects, and several other variables. 198 N.J. at 29.

The Court's opinion in <u>Witt</u> recognized that experience has shown the multi-factor exigent circumstances test of <u>Pena-Flores</u> and <u>Cooke</u> was difficult to apply with consistency, particularly for law enforcement officers on patrol, and placed upon them "unrealistic and impracticable burdens." 223 N.J. at 414-15. In addition, research from one county had revealed that the average time to procure a telephonic search warrant took nearly a full hour from the inception of the call to its completion, with even longer average times for some telephonic search warrants sought by the State Police. <u>Id.</u> at 436.

These impediments caused the police to seek on-the-spot consent from motorists to searches more frequently, a process which generated its own difficulties and uncertainties. <u>Id.</u> at 442-43. Moreover, the Court found that the <u>Pena-Flores/Cooke</u> standard of exigency "does not provide greater liberty or security to New Jersey's citizens." <u>Id.</u> at 414.

Based upon these and other considerations, the Court in <u>Witt</u> announced a bright-line rule to govern roadside automobile searches henceforth in this State. The approach in <u>Witt</u> prospectively reinstated various principles the

Court had embraced thirty-four years earlier in State v. Alston, 88 N.J. 211 (1981).  In the aftermath of Witt, the current law of this State[5] now authorizes warrantless on-the-scene searches of motor vehicles in situations where:  (1) the police have probable cause to believe the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous.  Witt, 223 N.J. at 447-48.

In reinstating this more predictable test in Witt, the Court rejected arguments that giving such warrantless search authority to the police is unnecessary where the driver and any other occupants of the vehicle have been secured.  As Justice Albin's majority opinion explained, the automobile exception is not nullified "merely because 'the particular occupants of the vehicle may have been removed from the [vehicle], arrested, or otherwise restricted in their freedom of movement[.]'"  Id. at 428 (quoting Alston, 88 N.J. at 234).

As a caveat to its holding, the Court in Witt did observe that if police do choose to have a vehicle towed away and impounded, they will need a warrant to search its interior at that later time, subject to possible routine inventory

---

[5]  The roadside search in the present case occurred after the date of the Court's September 24, 2015 opinion in Witt.  Hence, the Witt standards apply.

procedures that are not aimed at finding contraband.  Id. at 448-49, 49 n.9.[6]

The defense in this case stresses this observation.  In particular, the defense argues that once the basis to impound a vehicle becomes clear, police officers have no right to proceed with an on-the-spot roadside search, even if the officers have probable cause of criminality that arose spontaneously.  The trial court essentially adopted that defense argument, by requiring officers to refrain from an immediate warrantless search once the need to impound the vehicle is obvious.

We respectfully do not construe Witt to convey such a limitation upon the automobile exception.  Nothing in Witt states that a roadside search of a vehicle based upon probable cause cannot be performed if the vehicle is going to be impounded.  We instead read Witt as affording police officers at the scene the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later.[7]

---

[6]  Although not invoked by the State here, the Court's footnote in Witt also contemplated the possibility of a lawful warrantless search in situations "based on a true exigency."  Ibid.

[7]  There is also the possibility of obtaining a telephonic warrant, although the Court in Witt noted that doing so can be time-consuming.  Id. at 435-36.

We are mindful the Court's opinion in <u>Witt</u> did comment that "[w]arrantless searches should not be based on fake exigencies." <u>Id.</u> at 449. The defense and the trial court appear to interpret this comment to mean that warrantless roadside searches are allowable only if they are based on genuine exigencies, regardless of the presence of probable cause. However, the Court's comment about exigency must be considered in the full context of the paragraph in <u>Witt</u> where it appears. In that paragraph, the Court explains that it is parting from "federal jurisprudence that allows a police officer to conduct a warrantless search at headquarters merely because he could have done so on the side of the road." <u>Id.</u> at 448 (contrasting New Jersey's approach in <u>Witt</u> from the federal approach in <u>Chambers v. Maroney</u>, 399 U.S. 42, 52 (1970)). Quoting his previous dissent in <u>Pena-Flores</u>, Justice Albin's majority decision in <u>Witt</u> adds that "'[w]hatever inherent exigency justifies a warrantless search at the scene under the automobile exception certainly cannot justify the failure to secure a warrant after towing and impounding the car' at headquarters when it is practicable to do so." <u>Id.</u> at 448-49 (quoting <u>Pena-Flores</u>, 198 N.J. at 39 n.1 (Albin, J., dissenting)).

Viewed in its proper context, the Court's reference in <u>Witt</u> to "fake exigencies" signifies that the police cannot rely upon a contrived justification to search an <u>impounded vehicle</u> without a warrant merely because the vehicle

could have been searched earlier at the roadside. The whole tenor of the <u>Witt</u> opinion is to eliminate the need for police to establish "exigencies" <u>at the roadside</u> to proceed with a warrantless search. Instead, the Court readopted a bright-line rule, one that is predicated on the requirements of spontaneity and probable cause. That is the test we are obligated to apply today.

The Public Defender contends the position advocated by the State will result in greater risks to the personal safety of police officers who attempt to search a car at the side of the road, and will also cause a greater infringement on the liberty and privacy of motorists. Neither of those propositions is inexorably true.

In some instances, the police having probable cause will nevertheless choose to wait to search the vehicle with a warrant at a later time because of heavy traffic, poor lighting, weather conditions, security concerns, or other practical considerations. At times, officers may conduct only a cursory inspection at the scene and seek to conduct a more extensive search post-impoundment.

Moreover, an immediate search will not necessarily lead to greater infringements upon the personal liberty of all motorists. For example, in some instances (albeit not this particular case), an on-the-spot search will turn up nothing, and the stopped motorist may be free to drive away with only a traffic

citation. An inflexible rule of mandatory impoundment could impose greater inconvenience upon motorists, particularly if the vehicle's owner, a relative, or a friend of the motorist is nearby and able to come and remove the vehicle from the scene.[8] Id. at 415 (noting that if a vehicle is impounded, the period of detention of its occupants "will be extended").

That said, we do appreciate there are competing policy arguments presented here concerning the appropriate scope of Witt, and fairly debatable questions surrounding when impoundment should be the preferred course of action. Even so, it is not our role as an intermediate appellate court to engraft upon Witt an exception that was not expressed in the Court's detailed majority opinion.[9] State v. Hill, 139 N.J. Super. 548, 551 (App. Div. 1976) (noting our limited role as an intermediate appellate court).

---

[8] We recognize in the present case, Officer Olah admitted on cross-examination that he did not ask defendant if some other person was available to drive the Jeep away. However, the circumstances did not readily indicate that such a third party was likely to be nearby to remove the car. In particular, defendant had a suspended California license, the Jeep was registered in Alabama, according to defendant the Jeep was owned by a friend in New York, and defendant used it to visit a woman in Pennsylvania.

[9] That said, we note the State has acknowledged at oral argument on appeal that the police may not detain motorists for an unreasonable length of time while deciding whether to impound the vehicle or not. See Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1612 (2015) (disallowing police stops of motorists that exceed "the time needed to handle the matter"). Here, no such unreasonable delay is apparent from the record.

16

Consequently, we reverse the trial court's suppression order, which was erroneously based upon a no-longer-required showing of exigency that the Court repudiated in Witt. The record here demonstrates the police at the roadside had ample probable cause to believe the Jeep contained additional quantities of marijuana and potentially other evidence of illegal activity. The persisting smell of raw marijuana detected by Officer Olah – who the trial court found to be a credible witness – supplied the police with probable cause to search the rear cargo area within the Jeep from which the smell appeared to be emanating. See State v. Myers, 442 N.J. Super. 287, 297 (App. Div. 2015) (recognizing a police officer's detection of the odor of marijuana can suffice as probable cause that an offense has been committed). Furthermore, the probable cause here arose spontaneously.

In sum, the requirements of the automobile exception as set forth in Witt were established in this case, and the warrantless roadside search of the Jeep was thereby justified.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0180-18T4