**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0696-18T1

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

GARRY FLOYD,

     Defendant-Respondent.

_____

Argued September 19, 2019 – Decided October 22, 2019

Before Judges Alvarez and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-10-1175.

David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney; David Michael Liston, of counsel and on the brief).

Adam M. Lustberg argued the cause for respondent (Lustberg Law Offices, LLC, attorneys; Adam M. Lustberg, on the brief).

PER CURIAM

On leave granted, the State appeals an August 27, 2018 Law Division order suppressing drugs seized during a roadside stop from defendant Garry Floyd's car. As a result of the seizure, defendant was indicted for narcotics offenses.[1] In light of State v. Witt, 223 N.J. 409 (2015), we now reverse the judge's decision that the automobile exception to the warrant requirement did not apply to this roadside stop.

The facts are stipulated.[2] In July 2019, Woodbridge Township Police Detective Jaremczak[3] observed a narcotics sale, during which he identified the seller as an individual he referred to only as S1. Jaremczak conducted

---

[1] The five-count indictment charges defendant with third-degree possession of heroin, a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); first-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(1); second-degree possession of cocaine with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-7.1; and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a).

[2] R. 3:5-7(c) requires testimony to be taken "[i]f material facts are disputed . . ." in a suppression motion. In this case, defendant alleged, and argues on appeal, that the investigating officer had probable cause before the search was conducted. He claims that the roadside motor vehicle stop was a ruse for a warrantless seizure. Testimony and credibility findings would have assisted our review.

[3] The briefs and the transcript of oral argument do not contain the full names of any of the officers involved.

surveillance at S1's home over the next few weeks and witnessed a number of suspected drug transactions. In August, a confidential informant whom Jaremczak had found reliable in the past, told him that S1 was expecting a large shipment of cocaine.

Accordingly, Jaremczak continued to surveil S1's home over several days. On August 18, 2016, Jaremczak saw a white Mercedes parked in front of S1's residence. The driver went into the house for about twenty minutes, and talked to S1 for another ten on the front lawn. The driver then returned to the Mercedes and drove away.

On August 19, Jaremczak and another officer, Bonilla, located S1's vehicle in Perth Amboy. While observing S1's car, Jaremczak asked Bonilla to look for the Mercedes, which Bonilla found nearby. The Mercedes travelled to the location of S1's car, and then left the area in tandem with S1's vehicle. Jaremczak followed them back to S1's residence, which S1 entered through the front door.

Meanwhile, the driver of the Mercedes walked down the driveway alongside the house towards the rear, disappeared, returned, and threw something in the trunk of the vehicle. Jaremczak did not see what the driver threw into the trunk. When the car pulled away, Jaremczak and Bonilla

3

followed. During the next few miles, the officers witnessed the driver, later identified as defendant, committing multiple motor vehicle violations, including operating the Mercedes at seventy miles per hour in a fifty mile per hour zone, passing other drivers at a high rate of speed from the left- and right-hand lanes, and tailgating a tractor trailer.

Since no testimony was taken, we do not know why a third officer, a Detective Grogan, was asked to stop the motor vehicle while it was in Jaremczak and Bonilla's view. Grogan, as instructed by Jaremczak, ran defendant's name through his computer, ascertaining that defendant's license was suspended and that he had a motor vehicle history of driving while suspended. Also at Jaremczak's instruction, Grogan arrested defendant. Defendant was driven to the Woodbridge police headquarters while the officers remained at the scene.

Grogan had been traveling with his drug detection dog Blade, whom he brought out to examine the exterior of the Mercedes for narcotics. Blade alerted Grogan to the presence of contraband in the trunk, which was then searched.

Jaremczak seized two yellow ShopRite bags, one inside the other, containing a large clear bag holding approximately 495 grams of cocaine, from the trunk. A brown Gucci sunglasses case containing a small clear bag holding 0.9 grams of cocaine, and a small yellow bag holding 1.5 grams of powder

4

heroin were taken from the far left and right areas of the trunk. Two of the three pieces of mail in the trunk were addressed to defendant.

Grogan discovered a small blue bag of 0.3 grams of marijuana in the rear seat. Defendant and another person were listed as the owners of the Mercedes on documents in the glove compartment. Police also seized three pieces of mail addressed to defendant as well as a mailing box with defendant's name on it from the rear passenger floor. The Mercedes was towed to the Woodbridge Police Department impound yard, and complaints were filed against defendant.

In his oral decision, the Law Division judge seemed to say that the investigation before the sniff provided facts sufficient for an anticipatory warrant. At a minimum, he said:

> there was at least probable cause developed to believe that there was drug dealing activity engaged in by S1 as a result of the initial arrest of the person who S1 sold drugs to back in July 2016, which led to an investigation and surveillance over the next couple of weeks of S1 . . . .

The judge also found that once the dog sniff was positive, the officers had an obligation to obtain a search warrant. The car was secured and could readily have been towed before the search, as was done after. Thus he opined that since the officers had taken defendant into custody, and had probable cause to search

A-0696-18T1

the vehicle, they should have obtained a warrant, making the roadside search illegal.

On appeal, the State raises one issue for our consideration:

THE TRIAL COURT ERRONEOUSLY SUPPRESSED EVIDENCE FOUND IN DEFENDANT'S CAR FOLLOWING A VALID AND UNFORESEEABLE MOTOR VEHICLE STOP AND A CANINE ALERT TO NARCOT[IC]S IN THE TRUNK OF DEFENDANT'S CAR.

In light of Witt, and the law that has since developed, most notably, State v. Rodriguez, 459 N.J. Super. 13 (App. Div. 2019), the search of defendant's vehicle was proper. We examine this legal issue de novo. See State v. Gamble, 218 N.J. 412, 425 (2014); State v. Rockford, 213 N.J. 424, 440 (2013); State v. Gandhi, 201 N.J. 161, 176 (2010). Here, because the facts, incomplete as they may be, were stipulated, we only address whether the judge erred as a matter of law and do not consider whether his factual findings were supported by the record. See Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 50 (2012) (citing Gilhooley v. Cty. of Union, 164 N.J. 533, 545 (2000)).

It bears noting that probable cause did not exist at the point the officer saw defendant throw an unknown object into the back of the Mercedes. That the confidential informant claimed a substantial amount of narcotics would be delivered to S1 did not establish probable cause sufficient for the issuance of a

warrant, much less an anticipatory warrant. No date, time, manner of delivery, or other details were included in the tip. The confidential informant did not mention defendant's name. Hence it was not until the sniff took place that probable cause was developed.

It is black-letter law that the officers could lawfully deploy the canine. A sniff "does not transform an otherwise lawful seizure into a search that triggers constitutional protections." State v. Dunbar, 229 N.J. 521, 538 (2017). "If an officer has articulable reasonable suspicion independent from the reason for the traffic stop that a suspect possesses narcotics, the officer may continue a detention to administer a canine sniff." Id. at 540. So long as the sniff does not unduly extend the stop, it is permissible.

The officers lawfully stopped defendant because of his motor vehicle infractions, but had only an uncorroborated hunch that defendant possessed drugs. Once they stopped him, they were entitled to deploy the canine because they had a reasonable, articulable suspicion — but not probable cause — that defendant had narcotics in the trunk. It was not until the dog responded that probable cause arose.

Pursuant to Witt, officers may now conduct a warrantless search during a roadside stop "in situations where: (1) the police have probable cause to believe

the vehicle contains evidence of a criminal offense; and (2) the circumstances giving rise to probable cause are unforeseeable and spontaneous." Rodriguez, 459 N.J. Super. at 22 (citing Witt, 223 N.J. at 447-48). Applying the Witt standard, this automobile search passes constitutional muster.

The circumstances that gave rise to the sniff were "unforeseeable and spontaneous." Had defendant not violated the motor vehicle laws, the officers could not have stopped him. Although the officers suspected defendant of involvement in narcotics trafficking with S1, on this record, they had no specific information regarding his role or the contents of the plastic bag — they only had information regarding S1 and a mere hunch about defendant.

The item defendant placed in his trunk could have been innocuous. Not all objects even a known drug dealer obtains from a suspected drug dealer are going to be contraband. The bag could have contained anything. Although the officers had information regarding the anticipated delivery of a substantial amount of drugs to S1, they knew nothing about defendant's identity or his role in the transaction until after his arrest. Furthermore, defendant was taking the package from S1's home — not delivering it.

The officers were unexpectedly able to lawfully stop defendant; once they stopped defendant, the officers were entitled to conduct a canine sniff. Once

they received a positive response to the sniff, Witt did not require them to obtain a warrant and impound the vehicle before searching it. These circumstances are not the type of "fake exigencies" discouraged by the Witt Court. Rodriguez explains:

> Viewed in its proper context, the Court's reference in Witt to "fake exigencies" signifies that the police cannot rely upon a contrived justification to search an impounded vehicle without a warrant merely because the vehicle could have been searched earlier at the roadside. The whole tenor of the Witt opinion is to eliminate the need for police to establish "exigencies" at the roadside to proceed with a warrantless search. Instead, the Court readopted a bright-line rule, one that is predicated on the requirements of spontaneity and probable cause.
>
> [Rodriguez, 459 N.J. Super. at 24.]

That defendant was in custody does not impact the analysis. "[T]he automobile exception is not nullified" because a suspect is under arrest. Rodriguez, 459 N.J. Super. at 22. Witt and Dunbar control, and make this warrantless roadside search proper.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0696-18T1