NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3844-22

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

LADOHN E. COURTNEY,
ERIADNA V. MENTOR, and
TOMMIE S. NEWSOME,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 23, 2024**
>
> **APPELLATE DIVISION**

Argued January 24, 2024 – Decided February 23, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 23-02-0084, 23-02-0085, 23-02-0086 and 23-02-0087.

Milton Samuel Leibowitz, Assistant Prosecutor, argued the cause for appellant (William A. Daniel, Union County Prosecutor, attorney; Milton Samuel Leibowitz, of counsel and on the brief).

Peter Thomas Blum, Assistant Deputy Public Defender, argued the cause for respondent Ladohn E. Courtney (Joseph E. Krakora, Public Defender, attorney; Peter Thomas Blum, of counsel and on the brief).

Ruth Elizabeth Hunter, Designated Counsel, argued the cause for respondent Eriadna V. Mentor (Joseph E. Krakora, Public Defender, attorney; Ruth Elizabeth Hunter, on the brief).

Ehrlich, Petriello, Gudin, Plaza & Reed, PC, attorneys for respondent Tommie S. Newsome, join in the briefs of respondents Ladohn E. Courtney and Eriadna V. Mentor.

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

Under Article 1, Paragraph 7 of the New Jersey Constitution—our State's counterpart to the Fourth Amendment—police cannot conduct a search pursuant to the automobile exception to the warrant requirement once a vehicle has been towed away and impounded. State v. Witt, 223 N.J. 409, 448-49 (2015). This appeal requires us to probe the scope and rationale of that restriction, presenting the novel question of whether police may conduct a search under the automobile exception when they are required to impound a vehicle pursuant to John's Law,[1] but the vehicle has yet to be removed from the scene of the stop.

---

[1] John's Law, codified in N.J.S.A. 39:4-50.22 and -50.23, generally requires police to impound a vehicle for at least twelve hours when the driver is arrested for driving while intoxicated (DWI) or refuses to submit to a chemical breath test.

By leave granted, the State appeals from a June 29, 2023 Law Division order suppressing a loaded handgun found during a warrantless, non-consensual search of a vehicle that was pulled over for multiple traffic violations and erratic driving. The driver was arrested for DWI. The trial court ruled that because the vehicle was required to be impounded under John's Law, "[t]here was no additional emergency or exigent circumstances that would have required a search on the side of the road." The trial court thus concluded the officers were required to obtain a search warrant even though the search occurred roadside.

After carefully reviewing the record in light of the plain language and underlying rationale of our Supreme Court's pivotal decision in Witt, we reverse the suppression order. So long as police satisfy the foundational requirements of probable cause, spontaneity, and unforeseeability, the authority to conduct an automobile-exception search lapses only after the vehicle has been removed to a secure location, not in anticipation of such removal. We decline defendants' request to create a new bright-line rule making vehicles subject to John's Law categorically ineligible for an on-scene search under the automobile exception.

I.

A-3844-22

We discern the pertinent facts from the suppression hearing record.[2] On the night of September 20, 2022, Cranford Police Officer Antonio Bellomo observed a white Dodge Durango travelling westbound on North Avenue towards the northbound ramp of the Garden State Parkway. The vehicle swerved from the northernmost lane that accesses the ramp and came to an abrupt stop in the right lane. The vehicle then crossed over the solid, white line and began heading towards the southbound ramp of the Parkway. Before the vehicle entered the ramp, Bellomo saw it swerving within the right lane of travel. Bellomo initiated a motor vehicle stop. The vehicle travelled slowly on the shoulder before coming to a complete stop.

Bellomo exited his patrol car and approached the passenger side of the Durango. He smelled alcohol emanating from the vehicle's cabin. Bellomo asked the driver, Tommie S. Newsome,[3] for his driver's license, registration, and proof of insurance. Newsome provided his license and proof he rented the car at Newark airport.

---

[2] For purposes of determining the lawfulness of the warrantless search, the relevant facts are not disputed in this appeal.

[3] Newsome submitted a letter brief but did not participate in oral argument.

While speaking to Newsome, Bellomo saw a half-empty bottle of cognac on the passenger-side floor. He ordered Newsome out of the car and asked him if he had anything to drink. Newsome said he had a drink at a restaurant. Bellomo smelled alcohol on Newsome's breath. He administered sobriety tests, which Newsome failed. Bellomo arrested Newsome for DWI.

Ladohn E. Courtney was in the rear passenger-side seat. Patrol Officer Folinusz, who came to provide backup, saw Courtney was not wearing a seatbelt. Folinusz ordered Courtney to present his driver's license. A warrant check revealed an outstanding municipal court warrant. Courtney was placed under arrest and issued a summons for not wearing a seatbelt.

Bellomo ordered the front-seat passenger, Eriadna V. Mentor, to step out of the vehicle because it needed to be towed pursuant to John's Law. Bellomo searched the vehicle while it was still on the side of the road and found a handgun loaded with six rounds under the front passenger seat. After securing the handgun, Bellomo continued searching the vehicle and found another open bottle of cognac.

Courtney, Newsome, and Mentor were charged by indictment with unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1).

A-3844-22

They were also charged with certain persons not to have a firearm based on prior convictions, N.J.S.A. 2C:39-7(b)(1).

Newsome filed a motion to suppress the handgun, which Courtney and Mentor joined. Following a suppression hearing, supplemental briefing, and oral argument, the trial court granted the motion to suppress. The court issued an oral ruling, concluding:

> The [c]ourt believes that based on this … particular set of factual circumstances that has been presented, from the moment that Mr. Newsome was being arrested for [DWI] John's Law kicked in, and as a result of John's Law kicking in, [t]he [c]ourt reads [State v. Witt] to include when vehicles are towed and impounded. So it was immediately apparent at that moment, upon his removal from the vehicle, the smell of alcoholic beverages emanating from … Mr. Newsome, that was detected, his failure of the … balancing test, and then his subsequent [.18 blood alcohol test level] when taken to the station, when he was arrested for [DWI,] at that point John's Law was triggered …. [I]t is the opinion of [t]he [c]ourt that because John's Law was triggered [and] when vehicles are towed and impounded—and I'm expanding upon [Witt] in this respect, by just adding the following—when you know a vehicle is going to be towed and impounded, absent some exigency, a warrant must be secured …. I don't even need to get there. When vehicles are towed and impounded that should have flipped the switch that required a warrant to be obtained for the search of anything else. It does not matter to [t]he [c]ourt where the vehicle was at this point, whether it was on the side of the Parkway, whether it was on the side of a residential street, whether it was anywhere. What is of

6

import to [t]he [c]ourt is the fact that [Witt] specifically says towed and impounded vehicles must be searched only when a warrant [is] secured. This would be an entirely different conversation if this was not a situation where John's Law came into play. But I read these statutes in pari materia and I find that they are, for the purposes of this motion—again, a very fact-specific set of circumstances—are to be read together.

The trial court added:

[The officers] did not have the discretion to decide whether to impound and tow the vehicle. Rather, the vehicle was being towed as a matter of law. There was no additional emergency or exigent circumstances that would have required a search on the side of the road. It is the opinion of [t]he [c]ourt that based on the totality of the circumstances presented, in this particular matter, that the officers should have obtained a warrant for the search.

We granted the State's motion for leave to appeal. The State raises the following contention for our consideration:

THE TRIAL COURT ORDER GRANTING DEFENDANT[S'] MOTION TO SUPPRESS MUST BE REVERSED BECAUSE IT IS BASED UPON AN INCORRECT INTERPRETATION OF [Witt].

II.

We begin our analysis by acknowledging the legal principles governing this appeal. As a general matter, "[o]ur standard of review on a motion to suppress is deferential." State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n

7

appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We "defer[ ] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting Elders, 192 N.J. at 244); see also State v. Cohen, 254 N.J. 308, 318-19 (2023).

In contrast to the deference owed to a trial court's factual and credibility findings, we review a trial court's legal conclusions de novo. State v. S.S., 229 N.J. 360, 380 (2017). We regard the trial court's interpretation of Witt's on-scene search requirement to be a legal conclusion to which we owe no special deference. Accordingly, we review the contours of the automobile-exception reform announced in Witt with a fresh set of eyes. See ibid.

Turning to substantive legal principles, the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution "protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting Nyema, 249 N.J. at 527). Importantly for purposes of this appeal, "[o]ur jurisprudence under both constitutional

provisions expresses a preference that police officers secure a warrant before they execute a search." Witt, 223 N.J. at 422 (citing State v. Frankel, 179 N.J. 586, 597-98 (2004)). That preference finds expression in the bedrock principle that warrantless seizures are presumptively invalid. See State v. Goldsmith, 251 N.J. 384, 398 (2022); see State v. Pineiro, 181 N.J. 13, 19 (2004). "To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023), certif. denied, 255 N.J. 506 (2023) (alteration in original) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). The automobile exception is one such exception. Witt, 223 N.J. at 422.

That doctrine has undergone significant changes since it was first articulated by the United States Supreme Court in Carroll v. United States, 267 U.S. 132 (1925). Its episodic evolution under both the New Jersey and United States Constitutions is recounted in detail in Witt and Smart. See Witt, 223 N.J. at 422-40; Smart, 253 N.J. at 164-71. We need not reproduce our Supreme Court's scholarly historical analysis. It is sufficient for present purposes to note the New Jersey Supreme Court has charted its own course, relying on the

principle that our State Constitution can provide greater protections against unreasonable searches and seizures than are afforded under the United States Constitution. Smart, 253 N.J. at 165.

In a nutshell, the divergence between the New Jersey and federal automobile exceptions focuses on whether and how law enforcement must prove exigent circumstances to excuse the warrant requirement. In Carroll, the United States Supreme Court found a "vehicle's inherent mobility provided the exigency rationale for the exception to the warrant requirement." Witt, 223 N.J. at 423 (citing Carroll, 267 U.S. at 153). The United States Supreme Court does not require the prosecutor to prove case-specific exigency. As our Supreme Court noted in Witt:

> Under federal law, probable cause to search a vehicle "alone satisfies the automobile exception to the Fourth Amendment's warrant requirement." Maryland v. Dyson, 527 U.S. 465, 467 (1999). The federal automobile exception does not require "a separate finding of exigency in addition to a finding of probable cause," ibid., as is the case in New Jersey, Pena-Flores, 198 N.J. at 28.
>
> [Witt, 223 N.J. at 422.]

New Jersey's automobile-exception jurisprudence, in contrast, has always accounted for case-specific exigency, not just "inherent" exigency. However,

the methodology for determining whether there is sufficient exigency to justify a warrantless automobile search has changed significantly over the years.

In Witt, the Court definitively rejected as "unsound in principle and unworkable in practice" the multi-factor exigency test the Court used in State v. Cooke, 163 N.J. 657 (2000), and amplified in Pena-Flores. Witt, 223 N.J. at 447. Witt jettisoned that exigency test, which featured "a dizzying number of factors," replacing it with a much simpler, more predictable test to be applied prospectively. Id. at 444.

Although Witt substantially overhauled the material elements of the automobile exception, it by no means abandoned our State's steadfast adherence to a case-sensitive exigency analysis. And although Witt discarded the Pena-Flores exigency test, it did not invent a new exigency formulation to replace it. Rather, the Court resurrected the exigency test it developed decades earlier in State v. Alston, 88 N.J. 211 (1981). The restored Alston test requires the State to prove that probable cause to believe the vehicle contains contraband or other evidence of unlawful activity arose spontaneously and unforeseeably. Witt, 223 N.J. at 446-48; cf. Smart, 253 N.J. at 171-74 (explaining foreseeability and spontaneity as analytically distinct concepts and recognizing probable cause can arise spontaneously yet foreseeably, as when police investigate information

11

provided by a confidential informant that is corroborated during a motor vehicle stop).

Besides requiring proof of spontaneity and unforeseeability, Witt imposed another precondition—this one based on the "inherent" exigency arising during roadside encounters. Justice Albin, writing for the majority, explained:

> We also part from federal jurisprudence that allows a police officer to conduct a warrantless search at headquarters merely because he could have done so on the side of the road. See Chambers [v. Maroney], supra, 399 U.S. [42,] 52 [(1970)]. "Whatever inherent exigency justifies a warrantless search at the scene under the automobile exception certainly cannot justify the failure to secure a warrant after towing and impounding the car" at headquarters when it is practicable to do so. Pena-Flores, supra, 198 N.J. at 39 n.1 (Albin, J., dissenting). Warrantless searches should not be based on fake exigencies. Therefore, under Article I, Paragraph 7 of the New Jersey Constitution, we limit the automobile exception to on-scene warrantless searches.
>
> [Witt, 223 N.J. at 448-49 (emphasis added).]

Justice Albin succinctly summarized the location restriction, stating: "[g]oing forward, searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible. However, when vehicles are towed and impounded, absent some exigency, a warrant must be secured." Id. at 450.

12

In sum, under the Witt reformation of the New Jersey automobile exception, exigency is accounted for in two distinct ways, applying two distinct features.  First, the State must prove that probable cause to search arose spontaneously and unforeseeably.  Witt, 223 N.J. at 446-48.  This type of exigency analysis is case-sensitive and depends on the particular facts leading up to and during the police-citizen encounter.

Second, the search must be conducted while the vehicle is still at the scene of the stop.  Id. at 449.  This requirement, which we refer to as the location restriction, is a per se bright-line rule based on the inherent exigency associated with roadside stops.

### III.

This is not our first occasion to interpret Witt's location restriction.  In State v. Rodriguez, 459 N.J. Super. 13, 15 (App. Div. 2019), the trial court suppressed marijuana and other incriminating evidence police found inside a vehicle stopped for traffic violations. The trial court "construed Witt to disallow a warrantless on-the-spot roadside search where police at the scene have sufficient grounds to have the vehicle towed away and impounded." Ibid.  We reversed the suppression order, holding the "officers were not required to impound [the] defendant's vehicle in order to search it . . . . The officers had the

discretion to proceed instead with a warrantless roadside search, because the two critical elements of <u>Witt</u> . . . were satisfied." <u>Ibid.</u>

The defendant in that case argued "once the basis to impound a vehicle becomes clear, police officers have no right to proceed with an on-the-spot roadside search, even if the officers have probable cause of criminality that arose spontaneously." <u>Id.</u> at 22-23. We rejected that argument, explaining:

> We respectfully do not construe <u>Witt</u> to convey such a limitation upon the automobile exception. Nothing in <u>Witt</u> states that a roadside search of a vehicle based upon probable cause cannot be performed if the vehicle is going to be impounded. We instead read <u>Witt</u> as affording police officers at the scene the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later.
>
> [<u>Id.</u> at 23.]

We added, "[t]he whole tenor of the <u>Witt</u> opinion is to eliminate the need for police to establish 'exigencies' <u>at the roadside</u> to proceed with a warrantless search." <u>Id.</u> at 24 (emphasis in original).

In the matter before us, defendants urge us to part company with <u>Rodriguez</u>, or at least distinguish it. Courtney argues "[i]n short, different Appellate Division panels may disagree with each other, and the present occasion seems ripe for disagreement with <u>Rodriguez</u>'s reasoning." We

14

respectfully disagree with Courtney and wholeheartedly embrace our colleagues' interpretation in <u>Rodriquez</u> that <u>Witt</u> permits a roadside search even "<u>if the vehicle is going to be impounded</u>." <u>Id.</u> at 23 (emphasis added). Although we had no occasion in <u>Rodriguez</u> to consider whether the result would be different if police have no discretion on whether to impound a vehicle,[4] the careful and well-supported analysis in <u>Rodriguez</u> provides a solid foundation upon which to address the specific question raised in this matter.

IV.

On appeal, defendants do not dispute police had probable cause to search the vehicle for open containers of alcohol, during which the handgun was discovered under the front passenger seat. Nor do they dispute probable cause to search arose spontaneously and unforeseeably during the traffic stop. This matter hinges solely on whether the police violated the <u>Witt</u> location restriction.

---

[4] We note it is not entirely accurate to suggest John's Law invariably requires police to impound a vehicle operated by an arrested drunk driver. As the State correctly notes, in accordance with instruction in an Attorney General Law Enforcement Directive, John's Law "does not negate the [c]onstitutional right of the arrested person to make other arrangements for the removal of the vehicle by another person who is present at the scene of the arrest." Off. of the Att'y Gen., Law Enf't Directive No. 2004-1, Appendix B, <u>Guidelines Mandatory 12-Hour Impoundment of Motor Vehicles</u> (Feb. 20, 2004). Thus, impoundment is not automatically required in all DWI cases.

The gravamen of the defense argument is when a stopped vehicle must be towed as a matter of law, so that police have no discretion on whether to remove it from the scene, there invariably will be an opportunity to apply for a search warrant once the vehicle is safely secured. In those circumstances, defendants contend, the general preference for a search warrant becomes paramount, outweighing the rationale for the automobile exception.

That argument is supported by neither the plain language of Witt nor the reasons that prompted the Court to reform the automobile exception. We look first to the text of Witt that explains when the authority to conduct an automobile-exception search lapses. The Witt Court explicitly referred to "'the failure to secure a warrant after towing and impounding the car.'" Witt, 223 N.J. at 449 (quoting Pena-Flores, 198 N.J. at 39 n.1) (emphasis added). As previously noted, Rodriguez correctly rejected the notion the Witt location rule applies to impoundments that will be effectuated in the future.

We can scarcely imagine a more clearly stated rule than "we limit the automobile exception to on-scene warrantless searches." Ibid. And lest there be any doubt as to what the Witt Court intended, Justice Albin succinctly summarized the new rule, stating unambiguously, "[g]oing forward, searches on

the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible." Id. at 450 (emphasis added).

We reject the notion that authority to conduct an on-scene automobile-exception search depends on the reason why the vehicle will eventually be towed. The purpose of a John's Law impoundment is not to facilitate a police investigation or preserve evidence, but rather to prevent a drunk driver from regaining possession of the vehicle while still intoxicated. John's Law makes no mention of searches and thus neither authorizes nor precludes a probable cause search of an impounded vehicle.[5] Nor does the fact a vehicle will be towed/impounded pursuant to John's Law affect the inherent exigencies that exist while it is still at the scene of the stop. See infra Section V.

---

[5] The record before us does not indicate whether vehicles impounded pursuant to John's Law are typically taken to different impound facilities than are used to store vehicles that are instrumentalities of criminal conduct or are believed to contain physical evidence of criminal activity. As noted, vehicles are impounded under John's Law to dissociate them from intoxicated drivers, not to safeguard concealed evidence pending a warrant search. Vehicles seized for evidentiary purposes would presumably require more security to protect evidence from theft and preclude claims that evidence was planted or otherwise tampered with during the towing process or at the impound facility. Police and prosecutors have a practical interest in conducting prompt roadside searches to simplify the proofs relating to the chain of custody.

Moreover, John's Law is by no means the only basis for impounding vehicles. We presume there are countless occasions when impoundment is all but certain, such as when the vehicle is suspected to be an instrumentality and thus itself is evidence of a crime. If on-scene searches were categorically precluded when a vehicle is destined to be impounded, that rule might swallow the automobile exception. For purposes of implementing the <u>Witt</u> location restriction, therefore, we deem the critical determinant is not the likelihood—or inevitability—of impoundment, nor the reason for the decision to impound the vehicle. Rather, the clearly-articulated test is whether the vehicle was actually removed from the scene of the stop before the search was executed.

V.

We next turn our attention to the reasons that undergird the location restriction and how <u>Witt</u> addresses "inherent" exigency, that is, exigency that is essentially presumed and need not be specified and proved on a case-by-case basis. As we noted in <u>Rodriguez</u>, "[t]he whole tenor of the <u>Witt</u> opinion is to eliminate the need for police to establish 'exigencies' <u>at the roadside</u> to proceed with a warrantless search." 459 N.J. Super. at 24 (emphasis in original). We reaffirm that insightful observation.

Importantly, by overturning the Pena-Flores multi-factor exigency test, Witt stressed that police no longer need to estimate the probability of harm facing officers and motorists accounting for criteria such as traffic volume, lighting and weather conditions, and the nature of the neighborhood. Indeed, the whole point of the Witt reform is to obviate the need for officers to make subjective assessments about the level of exigency needed to excuse the warrant requirement. Instead, for purposes of the location restriction, the various risks posed to officers and motorists, and to unsecured evidence, are now incorporated within the concept of inherent exigency that arises intrinsically during a traffic stop.

The critical point is these inherent exigencies continue to exist so long as the detained vehicle remains on the roadside. They only dissipate and become "fake," to use the Witt Court's characterization, once the vehicle is removed to a secure location. We conclude the Witt Court did not mean to categorically foreclose an automobile-exception search while those exigencies still exist.

Rather, the point at which the location restriction is triggered is shown by Witt's clear explanation of when inherent exigency becomes so attenuated as to no longer excuse the warrant requirement notwithstanding probable cause had arisen spontaneously and unforeseeably. We reiterate Justice Albin's

admonition, "'[w]hatever inherent exigency justifies a warrantless search at the scene under the automobile exception certainly cannot justify the failure to secure a warrant <u>after towing and impounding the car</u>' …. Warrantless searches <u>should not be based on fake exigencies</u>." <u>Witt</u>, 223 N.J. at 448-49 (quoting <u>Pena-Flores</u>, 198 N.J. at 39 n.1) (emphasis added). The reference to "fake" exigencies signals the Court will not presume an impounded vehicle presents the same risks that exist out on the road; once the vehicle has been taken to a police-controlled impound facility, any such exigencies must be identified and proved by the State. Articulated another way, to conduct a warrantless probable cause search at the impound facility, police cannot rely on inherent exigency, but must instead show "true" exigency sufficient to excuse the warrant requirement. <u>Witt</u>, 223 N.J. at 449 n.9. Viewed in context, the Court's reference to "fake" exigencies <u>after</u> a vehicle has been towed/impounded signals the exigencies extant <u>before</u> towing/impoundment are <u>not</u> fake.

For the foregoing reasons, we read <u>Witt</u> to establish a simple binary test for determining where an automobile-exception search can be executed: provided the State has proved probable cause arose spontaneously and unforeseeably, searches conducted on-scene are permitted; searches conducted off-scene are not. Under this simple location-based paradigm, the question of

officer intent or discretion is irrelevant. All that matters is where the vehicle was located when it was searched.

## VI.

The defense argument proceeds from the premise that the automobile exception should be construed narrowly in accordance with the general preference for search warrants. As noted, the warrant preference is a bedrock principle of our search-and-seizure jurisprudence, as is the corollary principle that warrant exceptions are "jealously and carefully drawn." Jones v. United States, 357 U.S. 493, 499 (1958); see also State v. Johnson, 476 N.J. Super. 1, 25 (App. Div. 2023) ("we must strictly enforce the material elements" of a warrant exception).

But the automobile exception is a perfectly valid doctrine that balances competing constitutional interests—especially given the added protections afforded to motorists under our State Constitution—and serves a salutary purpose. Accordingly, the location restriction adopted in Witt must be interpreted and applied in light of the Court's explicit acknowledgment of the constitutional benefits of a contemporaneous on-the-spot warrantless search as compared to a delayed search conducted after the vehicle has been impounded and a search warrant obtained. The Witt Court explained:

The third rationale [for the automobile exception],[6] and in many ways the most compelling one, is that, for Fourth Amendment purposes, an immediate search of a vehicle may represent a lesser intrusion than impounding the vehicle and detaining its occupants while the police secure a warrant. See Chambers, … 399 U.S. at 51-52. In Chambers, Justice White, writing for the Court, mused that it was "debatable" whether "the immobilization" of a motor vehicle while the police secured a warrant was a "lesser" or "greater" intrusion than an immediate warrantless search premised on probable cause. Ibid. He concluded that either "seizing and holding a car before presenting the probable cause issue to a magistrate" or "carrying out an immediate search without a warrant" based on probable cause were both "reasonable" courses under the Fourth Amendment. Id. at 52.

Across the Supreme Court's jurisprudential spectrum, Justices have hewed to this viewpoint. Justice Marshall, in a dissent joined by Justice Brennan, wrote that "the warrantless search [of an automobile] is permissible because a warrant requirement would not provide significant protection of the defendant's Fourth Amendment interests." United States v. Ross, 456 U.S. 798, 831 (1982) (Marshall, J., dissenting). Justice Marshall observed that the process of seizing a car and detaining the driver while securing a search warrant "would be more intrusive than the actual search itself." Ibid. He therefore adhered to the position that "even where police can bring both the defendant and the automobile to the station safely and can house the car while they seek a warrant, the police are permitted to

---

[6] The Court was referring to the three rationales identified by the United States Supreme Court for the automobile exception, the first being the inherent mobility of the vehicle and the second being the lesser expectation of privacy in an automobile compared to a home. Witt, 223 N.J. at 422-23.

A-3844-22

decide whether instead to conduct an immediate search of the car." Ibid. (emphasis omitted).

[Witt, 223 N.J. at 424.]

Witt clearly expressed the New Jersey Supreme Court's present view on the subject, explaining:

> The current [Pena-Flores] approach to roadside searches premised on probable cause—"get a warrant"—places significant burdens on law enforcement. On the other side of the ledger, we do not perceive any real benefit to our citizenry by the warrant requirement in such cases—no discernible advancement of their liberty or privacy interests.
>
> [Id. at 446 (emphasis added).]

In a like vein, in Rodriguez, we commented:

> [A]n immediate search will not necessarily lead to greater infringements upon the personal liberty of all motorists. For example, in some instances (albeit not this particular case), an on-the-spot search will turn up nothing, and the stopped motorist may be free to drive away with only a traffic citation.[7] An inflexible rule of mandatory impoundment could impose greater inconvenience upon motorists, particularly if the vehicle's owner, a relative, or a friend of the motorist is

---

[7] We add that even when an on-scene search reveals a weapon, contraband, or other evidence leading to an occupant's custodial arrest, the arrestee might be charged and promptly released from the police station on recognizance or release conditions. But if police cannot conduct an on-the-spot search, the filing of a complaint-summons or a complaint-warrant application may be delayed pending the application for a search warrant and ensuing search of an impounded vehicle, ultimately delaying the suspect's release from custody.

nearby and able to come and remove the vehicle from the scene. [Witt, 223 N.J.] at 415 (noting that if a vehicle is impounded, the period of detention of its occupants "will be extended").

[Rodriguez, 459 N.J. Super. at 24-25.]

Lastly, we must not forget the Witt Court deemed it necessary to overhaul the automobile exception in part because the predecessor exigency formulation led to a surge of consent searches. As Justice Albin explained:

> The dramatic increase in the number of consent searches since Pena-Flores is apparently an unintended consequence of that decision. With hindsight, the explanation becomes clearer. Consent searches avoid the dangers of protracted roadway stops while search warrants are procured, and they remove the legal unpredictability surrounding a warrantless search based on the complex of factors detailed in Pena-Flores.
>
> . . . .
>
> To be sure, consent searches are permissible if not abused. Nevertheless, when it decided Pena-Flores, the Court did not expect that the rejection of the automobile exception would lead to police dependency on consent searches.
>
> [Witt, 223 N.J. at 442-44.]

Accordingly, in interpreting and applying Witt's location restriction, we must be careful not to inadvertently create practical incentives for police to resort again to the consent doctrine to justify on-the-spot searches. See supra

24

note 5 (discussing the practical incentive for police and prosecutors to simplify the chain of custody of seized evidence).

VII.

In the final analysis, we decline to adopt an additional restriction not articulated by the <u>Witt</u> Court. As we acknowledged in <u>Rodriguez</u>, "it is not our role as an intermediate appellate court to engraft upon <u>Witt</u> an exception that was not expressed in the Court's detailed majority opinion." 459 N.J. Super. at 25. We therefore conclude the on-scene search in this case was lawfully conducted under the New Jersey automobile exception as reformulated in <u>Witt</u>.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25