**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2896-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSEPH A. BROWN,

     Defendant-Appellant.

_____

Argued November 18, 2019 – Decided December 10, 2019

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 16-08-2417, 17-04-0900, 17-05-1425, and 17-06-1601.

Peter Thomas Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter Thomas Blum, of counsel and on the brief).

Emily M. M. Pirro, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After pleading guilty, defendant appeals from four counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); one count fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); one count second-degree eluding, N.J.S.A. 2C:29-2(b); one count third-degree possession of a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5(a)(1); and five counts of second-degree possession of a firearm while committing a CDS offense, N.J.S.A. 2C:39-4.1(a). Defendant challenges the denial of two motions to suppress evidence seized at different times: one during a traffic stop; and the other about six months later, during a foot chase after a drug transaction. We affirm.

On appeal, defendant argues:

> POINT I
>
> THE TWO GUNS FOUND INSIDE THE CONSOLE OF [DEFENDANT'S] CAR SHOULD HAVE BEEN SUPPRESSED BECAUSE THE PROSECUTOR FAILED TO PRESENT ANY EVIDENCE THAT THE SEARCHING OFFICER - - WHO DID NOT TESTIFY - - HAD ACTED REASONABLY IN BREAKING THE CONSOLE TO LOOK INSIDE. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. I, PARA. 7.

POINT II

THE DENIAL OF SUPPRESSION SHOULD BE REVERSED BECAUSE THE PROSECUTOR FAILED TO JUSTIFY THE STOP THAT RESULTED IN THE DISCOVERY OF THE GUN. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. I, PARA. 7.

A. The Prosecutor Failed to Prove Reasonable Suspicion to Justify the Stop in the Absence of Any Testimony From The Surveillance Officer and of Any Adequately Detailed Hearsay as to What the Surveillance Officer Had Observed.

B.  The Suspicionless Stop Was the Proximate Cause of [Defendant's] Tossing of the Gun, Requiring It to Be Suppressed.

POINT III

ALTERNATIVELY, A NEW SUPPRESSION HEARING SHOULD OCCUR BECAUSE THE HEARING [JUDGE] DEPRIVED [DEFENDANT] OF DUE PROCESS BY ACCEPTING UNRELIABLE HEARSAY ABOUT THE SURVEILLANCE OFFICER'S OBSERVATIONS AND BY NOT REQUIRING AN EXPLANATION FOR THAT OFFICER'S ABSENCE. U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, PARA. 1.

"[O]n appellate review, a trial [judge's] factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).  We

"accord deference to those factual findings because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 243 (2007) (citation omitted)). This court "should not disturb a trial [judge's] factual findings unless those findings are 'so clearly mistaken that the interests of justice demand intervention and correction.'" S.S., 229 N.J. at 374 (quoting Gamble, 218 N.J. at 425). But the trial judge's interpretation of the law and "the consequences that flow from established facts are not entitled to any special deference." Gamble, 218 N.J. at 425. Instead, we review legal conclusions de novo. Lamb, 218 N.J. at 313.

## A.

We begin by addressing the denial of defendant's first motion to suppress. As part of that motion, defendant argued that the judge should have suppressed two of the handguns seized from defendant's vehicle after police performed a traffic stop. We conclude that the stop was valid, that probable cause existed, and that two exceptions to the warrant requirement apply.

Police stopped the car after they observed it swerve and make a right turn without signaling. As police approached the car, they detected an odor of

A-2896-17T3

marijuana. As a result, police ordered the four passengers out of the vehicle, one by one, and patted them down, starting with defendant and ending with the front seat passenger. Upon patting down the last passenger, Detective Jose Perez noticed bullets on the passenger seat in plain view. Detective Perez then called for backup.

When the other officer units arrived, Detective Allen noticed—in plain view—"the buttocks of a gun . . . protruding from the console of the vehicle." The detectives placed the four men in handcuffs and called for a crime scene unit. The crime scene officer took pictures of the inside of the vehicle, including inside the console, in which the officer noticed two additional handguns. That officer also discovered a cigar wrapper inside the car, which Detective Perez said is used to wrap marijuana.

The Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Warrantless searches are "presumptively unreasonable," and thus, "the State bears the burden of proving the validity of a warrantless search." State v. Cushing, 226 N.J. 187, 199 (2016). Generally, evidence seized in violation of the warrant requirement must be suppressed. Mapp v. Ohio, 367 U.S. 643, 655

A-2896-17T3

(1961); In Interest of J.A., 233 N.J. 432, 446 (2018). "To be valid, a warrantless search must fit into a recognized exception to the warrant requirement." Cushing, 226 N.J. at 199 (citing State v. Watts, 223 N.J. 503, 513 (2015)).

The first applicable exception to the warrant requirement—the automobile exception—authorizes a police officer to conduct a warrantless on-scene search of a motor vehicle only when police have probable cause to believe the vehicle contains contraband or evidence of an offense and circumstances giving rise to this probable cause are "unforeseeable and spontaneous." State v. Witt, 223 N.J. 409, 447 (2015). The judge found, in accordance with Witt, that police had probable cause to believe that the vehicle contained contraband or evidence of an offense and that the circumstances giving rise to probable cause were "unforeseeable and spontaneous." Indeed, the record demonstrates that police had probable cause to believe the vehicle contained contraband. Moreover, the judge found that as police pulled defendant over for a motor vehicle violation, they saw bullets, a handgun, and evidence of marijuana use in plain view.

The plain view doctrine—the second applicable exception—allows police to seize contraband without a warrant. State v. Mann, 203 N.J. 328, 341 (2010). The doctrine has a three-prong test. "First, the police officer must be lawfully in the viewing area." State v. Bruzzese, 94 N.J. 210, 236 (1983). Second, the

6

officer's discovery of the evidence must be "inadvertent[], meaning that he did not know in advance where evidence was located nor intend[ed] beforehand to seize it."  Bruzzese, 94 N.J. at 236 (internal quotations and citation omitted). Third, "it has to be immediately apparent to the police that the items in plain view were evidence of crime, contraband, or otherwise subject to seizure." Bruzzese, 94 N.J. at 236 (internal quotations and citation omitted).  There is no expectation of privacy in areas visible through windows to a police officer outside of the vehicle.  State v. Reininger, 430 N.J. Super. 517, 534 (App. Div. 2013).

The judge found Detective Perez credible.  At the suppression hearing, Detective Perez stated that as he approached the rear of the vehicle he "smelled a strong odor of marijuana coming out of the vehicle."  He said that Detective Allen, the other officer with him, asked defendant who was smoking, and defendant stated that he "just finished smoking a blunt."  The smell of marijuana itself constitutes probable cause.  State v. Vanderveer, 285 N.J. Super. 475, 479 (App. Div. 1995); State v. Rodriguez, 459 N.J. Super. 13, 25 (App. Div. 2019) (denying suppression of evidence discovered during a warrantless automobile search because the officer smelled raw marijuana); see also State v. Nishina, 175 N.J. 502, 517-18 (2003) (finding probable cause to search the defendant's

vehicle where police smelled marijuana on defendant's person, discovered drug paraphernalia on the defendant's person, and observed in plain view a plastic bag protruding from the console). The judge noted that the "strong smell of marijuana" gave probable cause that there was contraband in the vehicle.

Defendant argues that the guns discovered during the vehicle search should be suppressed because the officer who broke the console did not testify. However, Detective Perez's credible testimony established that probable cause existed. "Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Schneider v. Simonini, 163 N.J. 336, 361 (2000) (alterations in original) (citations and internal quotations omitted). Detective Perez himself smelled the marijuana that led to the initial pat down of the passengers. He himself was the one who spotted the bullet on the front seat, suggesting that there was likely to be more evidence of illegal activity found in the car. That Detective Perez himself did not conduct the search that rendered two additional handguns is irrelevant, as he can testify to the probable cause that led to the search of the automobile.

A-2896-17T3

B.

We now turn to the second incident six months later, which led to the recovery of another gun. On this point, defendant maintains that the police lacked reasonable suspicion to stop him. Like the earlier suppression motion, probable cause existed.

Lieutenant Whitaker responded to complaints of narcotics transactions. He was conducting surveillance from an "[u]nconventional vehicle" in "plain clothes," with an arrest team nearby. Lieutenant Whitaker observed two individuals, one later identified as defendant, engage in an exchange of money for CDS. After the exchange of drugs, the other man was approached by police and dropped an item to the ground, which police seized and identified as heroin.

Police followed defendant as he walked away. They were in unmarked vehicles, but wore badges and tactical vests with "POLICE" on the front and back. The officers exited their vehicle and announced they were police as they approached defendant, who fled on foot. Detective James Cosgrove and Detective Anthony, who were contacted by Lieutenant Whitaker, followed defendant in their vehicle. They observed defendant reach into his pocket as he ran. As defendant ran alongside the car, Detectives Cosgrove and Anthony observed defendant remove a black handgun from either his waistband or jacket,

9

and continue to run while holding it in his hand. The detectives then witnessed defendant throw the gun over a gate and into an alleyway. Police arrested defendant, searched him incident to arrest, and seized a container of marijuana from his jacket pocket.

"[P]olice officers must obtain a warrant . . . before searching a person's property, unless the search 'falls within one of the recognized exceptions to the warrant requirement.'" State v. DeLuca, 168 N.J. 626, 631 (2001) (quoting State v. Cooke, 163 N.J. 657, 664 (2000)). An investigatory stop—like here—is a valid exception "if it is based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Rodriguez, 172 N.J. 117, 126-27 (2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). The parameters for an investigatory stop are well-established.

> [A] police officer may conduct an investigatory stop of a person if that officer has particularized suspicion based upon an objective observation that the person stopped has been or is about to engage in criminal wrongdoing. The stop must be reasonable and justified by articulable facts; it may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch.
>
> [State v. Coles, 218 N.J. 322, 343 (2014) (internal quotations and citations omitted).]

A-2896-17T3

The judge found that the officers had probable cause to arrest defendant based on the observations of Lieutenant Whitaker, who relayed to them that he witnessed defendant engage in a narcotics transaction. Detective Cosgrove testified that "[Lieutenant Whitaker] gave [officers] information regarding: [defendant], physical description, clothing description, height, weight, where he's positioned." The judge noted that "[a]t the very least, the officers had reasonable suspicion sufficient to stop and question [defendant], which ripens into probable cause on its own when [defendant] begins to flee after the officers announce themselves."

As Detective Cosgrove followed defendant, he witnessed him "remove[] a black semiautomatic handgun from either his jacket or his waistband area, which [he] could then clearly see. And [defendant] continued running towards the house . . . with the gun in his hand." He saw defendant throw his gun over the gate. The judge emphasized that Detective Cosgrove's observations "provide[d] more than sufficient context for the officers to determine that [defendant] was involved in criminal activity."

Detective Cosgrove testified that he personally saw defendant flee after defendant saw the police, adding weight to the already existing reasonable articulable suspicion. See State v. Citarella, 154 N.J. 272, 281 (1998). He

A-2896-17T3

observed defendant throw the gun over a fence, certainly giving him reasonable suspicion to conduct an investigatory stop. Detective Cosgrove also gave detailed testimony describing the events of the stop, which was corroborated by video testimony.

## C.

Finally, defendant argues that his due process rights were violated because the judge relied on hearsay at a suppression hearing, specifically, that Detective Cosgrove testified to what Lieutenant Whitaker observed. We need not address this issue because defendant failed to raise a hearsay objection at the suppression hearing. State v. Robinson, 200 N.J. 1, 19 (2009); see also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Nevertheless, we make these brief remarks.

N.J.R.E. 101(a)(2)(E) provides that at a suppression hearing, the rules of evidence "may be relaxed . . . to admit relevant and trustworthy evidence . . . [during] proceedings to determine the admissibility of evidence[.]" The New Jersey Supreme Court has emphasized that "hearsay is permissible in suppression hearings[.]" Watts, 223 N.J. at 519 n.4; see also State v. Gibson, 429 N.J. Super. 456, 466 (App. Div. 2013) (noting that suppression hearings "may include evidence inadmissible in the trial on the merits," and that "[t]he

A-2896-17T3

Rules of Evidence do not apply in the suppression hearing, except as to N.J.R.E. 403 and claims of privilege").

In State v. Williams, 404 N.J. Super. 147, 171 (App. Div. 2008), this court concluded that the defendant could not invoke his Sixth Amendment right to challenge the admission of hearsay during a suppression hearing because the right was "inapplicable" to the proceeding. See United States v. Raddatz, 447 U.S. 667, 679 (1980) (emphasizing that "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself"). Indeed, Detective Cosgrove's testimony was sufficiently reliable. Lieutenant Whitaker, the declarant, made the statements to his fellow police officers in the course of a narcotics investigation. Lieutenant Whitaker made the statements voluntarily during an investigation. He relayed what he observed, which was corroborated by the video, the heroin found on the buyer, and defendant's possession of marijuana and a weapon.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2896-17T3