NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A- 2334-21

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KYLE A. SMART,

    Defendant-Respondent.

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**June 30, 2022**

**APPELLATE DIVISION**

</div>

Argued May 31, 2022 – Decided June 30, 2022

Before Judges Messano, Accurso and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 21-10-1417.

Samuel Marzarella, Chief Appellate Attorney, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, of counsel and on the brief).

Clifford P. Yannone argued the cause for respondent (Starkey, Kelly, Kenneally, Cunningham & Turnbach, attorneys; Clifford P. Yannone, of counsel and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

By leave granted, the State appeals from a March 1, 2022 Law Division order suppressing evidence seized from a motor vehicle without a warrant. Police conducted an investigatory stop after surveilling the car for more than an hour and developing information that front seat passenger, Kyle A. Smart, was engaged in drug activity. At the roadside stop, no evidence of drug activity was observed in plain view; the occupants of the car neither made incriminating statements nor furtive movements; and the driver denied consent to search. Police then requested a K-9 unit. The dog alerted to the presence of narcotics, leading to a warrantless search of the car and seizure of a loaded handgun and drugs from the cabin.

Finding police had reasonable and articulable suspicion to pull over the vehicle, the motion judge upheld the stop and further determined probable cause arose when the canine sniff revealed the presence of narcotics in the car. However, the judge found the circumstances giving rise to probable cause were not "unforeseeable and spontaneous," justifying a warrantless search under the automobile exception to the warrant requirement pursuant to State v. Witt, 223 N.J. 409, 450 (2015). Accordingly, the judge suppressed the evidence seized.

On appeal, the State primarily contends police did not "possess[] probable cause well in advance of [the] automobile search," and thus law enforcement did "not sit on probable cause," in a manner proscribed by Witt.

See id. at 431-32. The State therefore maintains the warrantless search and seizure here passed constitutional muster under Witt.

Although we agree police could not have secured a warrant before the car was stopped and, in that sense, did not "sit" on probable cause, we disagree with the State's contention that probable cause under these circumstances was unforeseeable and spontaneous within the meaning of Witt. Notwithstanding the officers' reasonable suspicion that defendant was engaged in illegal activity involving drugs, leading to this investigatory stop, probable cause did not arise until the canine alerted for the presence of narcotics. We therefore conclude those circumstances were not unforeseeable and spontaneous under Witt and, as such, the automobile exception to the warrant requirement did not apply to this warrantless search. Accordingly, our review of the record leads us to affirm the motion judge's order, but we do so for slightly different reasons. See Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001) (permitting an appellate court to affirm for other reasons because "appeals are taken from orders and judgments and not from opinions").

## I.

Finding the material facts essentially uncontroverted, the judge decided the motion without a testimonial hearing. See R. 3:5-7(c) (requiring a testimonial suppression hearing when material facts are in dispute). That

finding was not contested in the trial court and is not disputed on appeal. We summarize the pertinent facts from the parties' written submissions and arguments before the motion judge.

Around 2:00 p.m. on August 4, 2021, Patrolman Louis Taranto of the Toms River Police Department, Special Enforcement Team (TRPD-SET) was conducting surveillance in the vicinity of a condominium complex located in the township. The complex was known to Taranto as a high crime area, which included frequent drug activity. Taranto noticed an unoccupied white 2017 GMC Terrain vehicle with tinted front windows parked in the complex's lot. The vehicle bore Georgia registration; a Carvana license plate frame was affixed to its front end.

While making these observations, Taranto recalled information he had received the previous month from a registered confidential informant (CI). According to the CI, "a black male with facial tattoos," between five-feet-seven and five-feet-nine inches, "with long dreadlocks," known as "Killer," operated a similar vehicle and distributed drugs "in the Toms River area." The CI had provided Taranto with a photograph of the GMC, which led the officer to identify the parked car. Based on the CI's information, Taranto conducted a database search, which disclosed defendant's name, height, and moniker. Defendant's mugshot depicted him with facial tattoos and long dreadlocks; his

criminal record included drug-related arrests, and several convictions, including weapons offenses. The totality of this information led Taranto to believe defendant was the suspect described by the CI.

Approximately thirty minutes later, a woman entered the driver's side of the car, and defendant entered the front passenger's side after he placed a small child in the rear seat. Taranto followed the vehicle, which made stops at a restaurant and bank in Toms River, characterized by the officer as "consistent with legitimate patronage." Apparently, other TRPD-SET officers joined the surveillance.

Eventually, the car stopped at a residence located on Shenandoah Boulevard. The driver remained in the car. Defendant exited the car, walked to the backyard of the building, and returned shortly thereafter with an unidentified white woman. The woman entered the residence; defendant re-entered the GMC. Police did not observe a hand-to-hand transaction but believed defendant and the woman had engaged in a drug deal based on the totality of the circumstances, including Taranto's training and experience, the information provided by the CI, and information provided by a concerned citizen (CC) to another TRPD-SET officer in June 2021. The officer told Taranto the CC suspected narcotics-related transactions between multiple residents of the building and the occupants of several cars that stopped there.

5

On one occasion, the CC observed "two black males" arrive in a white GMC Terrain bearing the same Georgia license plate as defendant's vehicle.

At 3:17 p.m. on the date of the incident, approximately one hour and seventeen minutes after Taranto initially identified the car at the condominium complex, police stopped the GMC near Hooper Avenue and Feathertree Drive. Taranto asked defendant to get out of the car. A pat-down revealed no weapons or drugs. After his Miranda[1] rights were read to him, defendant declined to disclose his reason for stopping at the Shenandoah residence or identify anyone with whom he met. Defendant claimed he merely "stopped to 'see his people.'" The driver refused consent to search the GMC but stated "nothing in the car was hers." The officers then called for a K-9 unit, and asked the driver to step out of the vehicle and remove the child.

At 3:40 p.m., approximately twenty-three minutes after police stopped the car and consent to search was refused, the K-9 unit conducted an exterior sniff of the vehicle. Immediately following the canine's positive detection, police searched the vehicle. Inside a backpack located on the front passenger's side floor, police found suspected heroin packaged in more than 400 wax folds, an unloaded handgun magazine, and a digital scale. Police also seized a loaded .40 caliber handgun from the center console, and $1,600 in cash from a

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2334-21

purse found on the rear seat. Defendant was arrested; the driver and her child were permitted to leave the scene in the GMC.

Defendant was charged in a seven-count Ocean County indictment with various drug and weapons offenses. He moved to suppress the evidence seized from the GMC, challenging the validity of the stop and the warrantless seizure of evidence. Following oral argument, the motion judge reserved decision.

In her March 1, 2022 decision from the bench, the judge initially found police "had articulable reasonable suspicion that criminal or unlawful activity had just occurred when they stopped the vehicle." Detailing the officers' observations as summarized above, the judge's decision was grounded in the totality of the circumstances during the "long period of surveillance."

Turning to the automobile exception to the warrant requirement, the motion judge noted the parties did not dispute probable cause arose when the canine alerted for the presence of narcotics. Thus, the remaining legal issue before the judge was "whether the police could search the vehicle or if they needed to impound the vehicle and obtain a search warrant." Citing Witt and our decision in State v. Rodriguez, 459 N.J. Super. 13 (App. Div. 2019), the judge was not persuaded by the State's argument that the circumstances giving rise to probable cause to search the GMC were unforeseeable and spontaneous.

Finding "everyone waited twenty-five minutes" for the K-9 unit to arrive, alert to the presence of drugs, and establish probable cause, the judge elaborated:

> The investigatory stop was based on an hour-and-twenty-minute surveillance of the defendant that was initiated by a CI's tip. Stopping defendant's car was not based on some traffic violation which . . . then led to probable cause to conduct a warrantless search. The surveillance, car stop, and K-9 sniff were based solely on the officers' belief that defendant had drugs in the vehicle.
>
> Under <u>Witt</u>, the automobile exception to a warrantless search of defendant's car does not apply as their goal was a clear and deliberate effort to uncover drugs. There was nothing spontaneous about the decision to search defendant's car.

The judge also rejected the State's argument that obtaining a warrant was impracticable due to the inherent mobility of the vehicle in view of the number of officers at the scene, the proximity of the impound lot, and because the occupants had been removed from the vehicle.

## II.

Ordinarily, our review of a trial court's decision on a suppression motion is circumscribed. <u>See e.g.</u>, <u>State v. Dunbar</u>, 229 N.J. 521, 538 (2017) (stating appellate courts defer to the motion judge's factual and credibility findings provided they are supported by sufficient credible evidence in the record). Deference is not due where, as in the present matter, the trial court has not

8

conducted a testimonial hearing and the facts are undisputed. <u>Ibid.</u> (recognizing legal conclusions are reviewed de novo).

Well-established constitutional principles guide our review. "Warrantless seizures and searches are presumptively invalid as contrary to the United States and the New Jersey Constitutions." <u>State v. Pineiro</u>, 181 N.J. 13, 19 (2004); <u>see also</u> <u>U.S. Const.</u> amend. IV; <u>N.J. Const.</u> art. I, ¶ 7. "Our jurisprudence under both constitutional provisions expresses a preference that police officers secure a warrant before they execute a search." <u>Witt</u>, 223 N.J. at 422. To overcome this preference, the State must show by a preponderance of evidence that the search falls within one of the well-recognized exceptions to the warrant requirement. <u>State v. Manning</u>, 240 N.J. 308, 329 (2020). The warrant requirement "is not lightly to be dispensed with, and the burden is on the State, as the party seeking to validate a warrantless search, to bring it within one of those recognized exceptions." <u>State v. Alston</u>, 88 N.J. 211, 230 (1981). "One such exception is the automobile exception to the warrant requirement." <u>Witt</u>, 223 N.J. at 422.

Abandoning the "pure exigent-circumstances requirement" it had added to the constitutional standard to justify an automobile search in <u>State v. Cooke</u>, 163 N.J. 657, 671 (2000), as reiterated in <u>State v. Pena-Flores</u>, 198 N.J. 6, 11 (2009), the Court in <u>Witt</u> declared the exigency requirement was "unsound in

principle and unworkable in practice," 223 N.J. at 447. But the Court declined to adopt the less-stringent federal standard for warrantless searches of a vehicle,[2] returning instead to the standard set forth in <u>Alston</u>. <u>Ibid.</u> (citing <u>Alston</u>, 88 N.J. at 233). Thus, the <u>Witt</u> Court announced: "Going forward, searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible. However, when vehicles are towed and impounded, absent some exigency, a warrant must be secured." <u>Id.</u> at 450; <u>see also</u> <u>Rodriguez</u>, 459 N.J. Super. at 23 (footnote omitted) (stating <u>Witt</u> "afford[s] police officers at the scene the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later").

By resurrecting state constitutional safeguards first enunciated in <u>Alston</u> to the expansive federal interpretation of the automobile exception, the Court reasoned, "<u>Alston</u> properly balances the individual's privacy and liberty interests and law enforcement's investigatory demands." <u>Witt</u>, 223 N.J. at 447. Further, "<u>Alston</u>'s requirement of 'unforeseeability and spontaneity,'" does not unduly burden law enforcement. <u>Ibid.</u> (quoting <u>Alston</u>, 88 N.J. at 233). By

---

[2] "Under federal law, probable cause to search a vehicle 'alone satisfies the automobile exception to the Fourth Amendment's warrant requirement.'" <u>Witt</u>, 223 N.J. at 422 (quoting <u>Maryland v. Dyson</u>, 527 U.S. 465, 467 (1999)).

 A-2334-21

way of example, the <u>Witt</u> Court stated, "if a police officer has probable cause to search a car and is looking for that car, then it is reasonable to expect the officer to secure a warrant if it is practicable to do so." <u>Id.</u> at 447-48. Thus, the Court "eliminate[d] the concern expressed in <u>Cooke</u>," that police "could not sit on probable cause and later conduct a warrantless search, for then the inherent mobility of the vehicle would have no connection with a police officer not procuring a warrant." <u>Id.</u> at 448, 431-32 (citing <u>Cooke</u>, 163 N.J. at 667-68).

In the present matter, it is undisputed that police lacked probable cause to search the GMC prior to encountering defendant at the condominium complex. Nor did probable cause arise during the one-hour-and-seventeen-minute surveillance. Because police had only reasonable suspicion, not probable cause, to believe the GMC contained criminal contraband, a warrant would not have issued at any point during the surveillance. Accordingly, this is not a case where police "sat" on probable cause and could have obtained a warrant before stopping the car. Probable cause did not arise until the K-9 unit responded to the scene and the dog positively alerted for the presence of narcotics in the car.

However, prohibiting police from obtaining probable cause "well in advance" of a warrantless search is not the sole command of <u>Witt</u>. Probable

A-2334-21

cause pursuant to the post-Witt automobile exception must "aris[e] from unforeseeable and spontaneous circumstances."  223 N.J. at 450.  We have upheld the validity of the warrantless search of an automobile under Witt where police smelled marijuana emanating from the defendant's vehicle after stopping the car for a traffic violation.[3]  Rodriguez, 459 N.J. Super. at 25. Based on our review of the record in Rodriguez, we concluded "the police at the roadside had ample probable cause to believe the [vehicle] contained additional quantities of marijuana and potentially other evidence of illegal activity."  Ibid.  Unlike the present matter, however, police did not summon a K-9 unit to the scene in Rodriguez.

We are not convinced Witt's holding is limited to probable cause that arises after a roadside stop based on a motor vehicle violation, as the motion judge seemingly suggested here.  The circumstances giving rise to probable cause may be unforeseeable and spontaneous following an investigatory stop – even if police expect to find contraband in the vehicle.  We discern no constitutionally significant distinction between law enforcement's observations

---

[3]  Rodriguez was decided prior to the February 22, 2021 enactment of The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31 to -56.  Under the Act, an "odor of cannabis or burnt cannabis" cannot create a "reasonable articulable suspicion of a crime" under most circumstances.  N.J.S.A. 2C:35-10c(a).

of criminal activity after a car is stopped for a motor vehicle violation and those same observations following an investigatory stop.

For example, had police observed drugs in plain view upon effecting the investigatory stop in this case, the automobile exception readopted by the Court in Witt likely would have been satisfied. See, e.g., State v. Gonzales, 227 N.J. 77, 102-03 (2016). Similar to the officer's plain sniff observations after stopping the vehicle we upheld in Rodriguez, 459 N.J. Super. at 25, probable cause would have "aris[en] from unforeseeable and spontaneous circumstances," Witt, 223 N.J. at 450. Here, police conducted the investigatory stop after surveilling the GMC for fewer than two hours, following observations the motion judge credited as establishing articulable suspicion to stop the car. We disagree with the judge that law enforcement's suspicions of drug activity before the stop made the automobile exception unavailing. But the validity of the warrantless roadside search of the GMC does not end with the Court's holding in Witt.

In our view, the issue is whether the canine's alert to the presence of narcotics under the circumstances presented here changed the equation. For guidance, we turn to the Court's subsequent decisions in Dunbar and State v. Nelson, 237 N.J. 540 (2019), as informed by the United States Supreme Court's decision in Rodriguez v. United States, 575 U.S. 348 (2015).

13

According to the federal high court: "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." Rodriguez, 575 U.S. at 356. Absent reasonable and articulable suspicion, the unreasonable extension of a motor vehicle stop to conduct a canine sniff constitutes an unreasonable seizure. Id. at 355. Our Supreme Court adopted this federal standard in Dunbar, 229 N.J. at 533-34.

The Court in Dunbar held an officer "does not need reasonable suspicion independent from the justification for a traffic stop in order to conduct a canine sniff[,]" provided the officer does "not conduct a canine sniff in a manner that prolongs a traffic stop beyond the time required to complete the stop's mission, unless he [or she] possesses reasonable and articulable suspicion to do so." Id. at 540 (citing Rodriguez, 575 U.S. at 357). Beyond issuing a ticket, an officer's traffic mission may include checking the driver's license, inspecting the vehicle's registration and proof of insurance, and ascertaining if there are warrants for the driver's arrest. See Rodriguez, 575 U.S. at 355; Dunbar, 229 N.J. at 533. Police may only continue the roadside detention to summon a K-9 unit if reasonable and articulable suspicion arises independently from the reason for conducting the motor vehicle stop, in the course of completing the mission of the stop. Dunbar, 229 N.J. at 539. Thus,

14

"in the absence of such suspicion, an officer may not add time to the stop." Id. at 540. "'In determining whether reasonable suspicion exists, a court must consider the totality of the circumstances – the whole picture.'" Nelson, 237 N.J. at 554 (quoting State v. Stovall, 170 N.J. 346, 361 (2002)).

Acting on information provided by the Bureau of Alcohol, Tobacco, and Firearms (ATF), the police in Nelson followed the car and pulled it over for violating certain traffic laws. Id. at 546-47. Upon stopping the defendant's car, the detective "was immediately overwhelmed by the smell of air fresheners emanating from the vehicle." Id. at 547. Thirty-seven minutes after the defendant refused consent to search, a K-9 unit arrived at the roadside scene and the dog alerted to the presence of narcotics in the vehicle. Id. at 546.

The Court concluded the thirty-seven-minute delay between the defendant's denial of consent to search the car and the K-9 unit's arrival "exceeded the time needed to accomplish the tasks." Id. at 554 (internal quotation marks omitted). But the Court held police had reasonable suspicion to justify the delay in completing the dog sniff based on the totality of several factors leading to and during the motor vehicle stop. Id. at 554-55. Those factors included: an anonymous tip from the ATF, disclosing a man fitting the defendant's description would be transporting controlled dangerous substances

15

on the New Jersey Turnpike; the defendant's "nervous behavior"; the defendant's "conflicting accounts of his trip itinerary"; "large bags in the cargo hold"; the defendant's "admission of prior narcotics arrests"; and "the overwhelming smell of air freshener." Id. at 548.

In the present matter, reasonable articulable suspicion of criminal activity arose prior to the stop. Namely, police suspected defendant of engaging in drug activity based on confidential sources and their observations during their continuous, same-day surveillance. Police also knew defendant had a criminal history, including drug arrests and convictions for weapons offenses. Unlike the circumstances in Nelson, however, the officers' suspicions were not confirmed by their observations after the stop was conducted. Nonetheless, the mission of the stop – an investigation into illegal drug activity – remained ongoing until the K-9 unit arrived. In particular, because the stop was not based on a motor vehicle infraction, the stop's mission did not cease after police conducted "ordinary inquiries incident to [the traffic] stop." Rodriguez, 575 U.S. at 355 (alteration in original) (quoting Illinois v. Caballes, 543 U.S. 405, 408 (2005)). Instead, the totality of the factors that gave rise to reasonable articulable suspicion of drug activity to stop the car, justified prolonging the stop until the K-9 unit arrived because the dog sniff for suspected narcotics was "reasonably related in scope" to the basis

16

for the stop.  See Terry v. Ohio, 392 U.S. 1, 19-20 (1968) (recognizing the validity of a search and seizure turns on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place").

However, we are not convinced the canine's alert for the presence of narcotics – which gave rise to probable cause in this case – falls within the ambit of circumstances the Witt Court contemplated as "unforeseeable and spontaneous" under the automobile exception.  When the officers' sensory perceptions failed to confirm their suspicions of drug activity following the stop of the GMC, police summoned the K-9 unit for the sole purpose of developing probable cause.  That investigative tool, although validly employed under Dunbar and Nelson, nonetheless fails under Witt, because the use of the K-9 unit under the circumstances presented here did not result in the spontaneous and unforeseeable development of probable cause; it was simply another step in the search for drugs that caused the stop in the first place.  Thus, when probable cause sufficient to support a search of the vehicle developed, police at that juncture were required to seek a warrant.  We conclude their failure to do so rendered the ensuing search fatally defective.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17