NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2800-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROBERT A. BAKER, a/k/a
ROBERT BAKER, and
ROBERT BAKER JR.,

    Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **March 7, 2024**
>
> **APPELLATE DIVISION**

Submitted December 6, 2023 – Decided March 7, 2024

Before Judges Currier, Susswein and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 20-12-0495.

Joseph E. Krakora, Public Defender, attorney for appellant (Tiffany J. Barlow, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen Christopher Sayer, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CURRIER, P.J.A.D.

In this matter, we consider whether the trial court properly denied defendant's motion to suppress evidence seized after a search of the vehicle defendant was operating following a traffic stop. When the officer approached defendant's vehicle, he noticed a burnt smell of marijuana emanating from it. The officer did not intend to search the vehicle at that point. However, after the dispatcher informed the officer defendant had an outstanding warrant necessitating defendant's arrest, and the officer smelled a perceptible odor of raw marijuana on defendant's person as they sat together in the patrol car, the officer decided to search the vehicle.

We conclude that the officer's testimony regarding the odors established probable cause for the subsequent search of the vehicle. In addition, the finding of probable cause arose in unforeseeable and spontaneous circumstances. There were not two stops as argued by defendant. The discovery of the warrant and new smell emanating from defendant's person permitted the officer to continue the investigation. The search was permissible under the automobile exception to the warrant requirement as articulated in State v. Witt, 223 N.J. 409 (2015). We affirm.

I.

Defendant was charged in an indictment with first-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(b)(8),

and three counts of third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1).

After defendant moved to suppress the evidence seized during the search, Judge Cristen D'Arrigo conducted a hearing during which the State presented testimony from New Jersey State Trooper Will Clements, video footage of the encounter recorded by Clements's body worn camera (BWC), and a transcript of the BWC audio.

Clements testified that at approximately 1:30 a.m. on June 20, 2020, he observed an SUV, driven by defendant, swerve several times out of the traffic lane and onto the shoulder of the roadway and then make an illegal U-turn. Clements directed defendant to pull over and activated his BWC.

As Clements approached defendant's driver-side window, he asked for defendant's credentials. Defendant stated he did not have any documentation regarding the vehicle, nor did he have his license or wallet with him. He denied that the square, bulky shape in his pocket was a wallet. Clements did not notice any marijuana odor during this first interaction, which lasted approximately six minutes.

Defendant called his girlfriend and owner of the SUV, Tameka Hannah, and asked her to bring the vehicle's documents. He also provided his name and date of birth to Clements. The dispatcher advised Clements that defendant had

an outstanding traffic warrant. Therefore, Clements made his second approach to defendant's driver-side window. Hannah had arrived and given defendant documents regarding the SUV that defendant gave to Clements.

Clements told defendant about the traffic warrant and explained that, although he had to arrest defendant, the jail was not accepting individuals with traffic warrants because of COVID-19, so defendant would be released on his own recognizance "on the scene" after Clements processed him. Clements testified that he detected the "faint" "odor of burnt marijuana" coming from the SUV during this second driver-side-window interaction, which lasted approximately one and a half minutes.

Clements handcuffed defendant and performed a search of him incident to arrest, revealing a large amount of cash, two cell phones, and a wallet containing his driver's license. Then Clements returned the items to defendant's pockets. No marijuana was discovered on defendant's person.

Once Clements had assisted defendant into the back seat of the patrol car and returned to the driver's seat, the dispatcher advised him that defendant also had an outstanding warrant for a violation of probation. During the approximately ten minutes that passed while Clements waited for dispatch to confirm the second warrant, he spoke briefly with the officer who had arrived at

A-2800-21

the scene, Trooper Lewis. The discernible dialogue heard on the BWC included the following exchange:

CLEMENTS: I . . .

LEWIS: Uh getting a odor?

CLEMENTS: Little bit, but . . . [interrupted by radio transmission][.]

Clements testified during the hearing that he said "little bit, but" because—despite smelling marijuana—he did not intend to search the vehicle at that point. He explained that, with only an outstanding traffic warrant, he would process defendant and then release him on his own recognizance.

However, after the dispatcher confirmed the second warrant, Clements informed defendant that he was required to transport defendant to the county jail. Clements testified that he still did not intend to search the vehicle, explaining:

> I was out actively looking for individuals drinking and driving. [Defendant] ended up having two warrants. I knew I was going to take him to the county jail, which during the time was taking quite a bit of time because of COVID[-19] restrictions. At that point, it was almost [two] in the morning, I figured my shift was done in a few hours, go back to get some paperwork done.

Defendant asked Clements to give the belongings from defendant's pockets to Hannah who was going to drive the SUV to her home. While emptying defendant's pockets for the second time, Clements asked defendant

whether he had any marijuana on him; defendant replied he did not. This discussion followed:

> CLEMENTS: Did you smoke earlier?
>
> DEFENDANT: Yeah, I probably did smoke earlier.
>
> CLEMENTS: Alright, cause I can smell it coming off ya.
>
> DEFENDANT: Yeah.

Clements testified that the odor coming from defendant smelled like "raw marijuana" and was noticeable as defendant sat in the patrol car.

According to Clements, at this point, he decided to call his sergeant and ascertain whether he could search the SUV if he smelled raw marijuana on defendant and a "faint burnt" smell coming from inside the vehicle. The BWC captured Clements's side of the conversation. He understood the discussion as confirmation that he could search the vehicle.

During the search, Clements observed "bits and pieces of marijuana" on the floor of the front driver and passenger sides of the SUV, but he did not collect any raw marijuana. He also found a "large sum of cash currency inside a rubber band in the center console of the vehicle" and a backpack containing various types of controlled dangerous substances and baggies used for distribution.

Following the close of the hearing, Judge D'Arrigo issued an oral decision. The judge "first and foremost found . . . Clements' testimony to be quite

credible," characterizing the search as "reluctant," and "the most non-pretextual search [he'd] ever seen." The judge denied defendant's motion to suppress, finding: the initial stop of the SUV was based on a reasonable articulable suspicion of a motor vehicle violation; defendant's arrest was valid due to the outstanding motor vehicle warrant; and Clements had detected a faint burnt odor inside the vehicle and the smell of raw marijuana on defendant, furnishing him with probable cause to search the vehicle.

Thereafter, defendant pleaded guilty to first-degree possession of a controlled dangerous substance with intent to distribute. He was sentenced to a ten-year term of imprisonment with a thirty-nine-month period of parole ineligibility.

## II.

On appeal, defendant presents the following arguments for our consideration:

> POINT I
> THE TRIAL COURT ERRED IN FINDING THAT THE OFFICER HAD PROBABLE CAUSE TO CONDUCT A WARRANTLESS CAR SEARCH BECAUSE THERE IS NO CREDIBLE EVIDENCE IN THE RECORD THAT THE OFFICER SMELLED MARIJUANA. ALTERNATIVELY, THE CIRCUMSTANCES LEADING TO PROBABLE CAUSE WERE NOT UNFORESEEABLE AND SPONTANEOUS BECAUSE THE OFFICER HAD ALREADY CONCLUDED THE STOP PRIOR TO THE SEARCH[.]

A. There Was No Credible Evidence in [t]he Record [t]o Support [a] Finding That [t]he Officer Smelled the Odor [o]f Marijuana.

B. Alternatively, Probable Cause [W]as Not Unforeseeable and Spontaneous Because the Trooper Concluded the Stop [b]efore Deciding to Go Back and Search.

Defendant contends the court erred in denying the suppression motion because Clements's testimony was not credible and therefore could not support a finding of probable cause. In addition, he asserts the search did not fall within the automobile exception because the circumstances giving rise to probable cause were not unforeseeable and spontaneous.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "[F]actual findings based on a video recording or documentary evidence" are reviewed under the same standard. State v. S.S., 229 N.J. 360, 381 (2017).

We accord deference to a trial court's credibility findings, in particular, because they "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are

not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). We will only intercede when those "findings are so clearly mistaken—so wide of the mark—that the interests of justice demand" it. S.S., 229 N.J. at 381. No deference is owed to the legal determinations of the trial court, which are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

Both the Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of our State Constitution protect "against unreasonable searches and seizures" and prohibit the issuance of warrants in the absence of probable cause. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; State v. Robinson, 228 N.J. 529, 543-44 (2017). Evidence seized pursuant to an unlawful search "must be suppressed." State v. Smith, 155 N.J. 83, 100 (1998). "[S]earches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable and therefore invalid." State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting Elders, 192 N.J. at 246).

To overcome the presumption, "'the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it "f[ell] within one of the few well-delineated exceptions to the warrant requirement."'" State v. Bryant, 227 N.J. 60, 69-70, (2016) (alteration in original) (quoting State v. Johnson, 193 N.J. 528, 552

(2008)). "One such exception is the automobile exception . . . ." Witt, 223 N.J. at 422.

A.

We first address defendant's arguments regarding probable cause. "Probable cause . . . requires 'a practical, common sense determination whether, given all of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found[.]"'" State v. Myers, 442 N.J. Super. 287, 301 (App. Div. 2015) (alteration in original) (quoting State v. Moore, 181 N.J. 40, 46 (2004)).

At the time of defendant's arrest, "'the smell of marijuana itself constitute[d] probable cause "that a criminal offense ha[d] been committed and that additional contraband might be present"'" and "that the detection of that smell satisfie[d] the probable[]cause requirement." State v. Walker, 213 N.J. 281, 287-88, 290 (2013) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)). The strength of the odor is irrelevant for purposes of establishing probable cause. State v. Judge, 275 N.J. Super. 194, 201 (App. Div. 1994).

Eight months after defendant's arrest, the Legislature enacted the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, which became effective on February 22, 2021. As a result of CREAMMA, an odor of

marijuana cannot create reasonable suspicion or probable cause to conduct a warrantless search. N.J.S.A. 2C:35-10c(a). However, CREAMMA only applies prospectively, State v. Cohen, 254 N.J. 308, 328 (2023), and therefore is not applicable to defendant's arrest.

As set forth above, Clements testified that he detected the "faint" "odor of burnt marijuana" emanating from the motor vehicle while he stood outside defendant's driver-side window. He also described the smell of "raw marijuana" coming from defendant's person as they sat in the patrol car.

Judge D'Arrigo stated several times that he found Clements's testimony regarding the odors emanating from defendant and the SUV "quite credible." He also noted the overall credibility of Clements's testimony. In deferring to those credibility findings, we are satisfied there was sufficient evidence to support the court's determination that the testimony regarding the odors established probable cause for the subsequent search of the SUV.

## B.

We turn to defendant's argument that, even if probable cause was established by Clements's detection of marijuana odor coming from the vehicle and from defendant's person, the circumstances giving rise to probable cause were not unforeseeable and spontaneous, and, therefore, the warrantless search does not fall within the automobile exception. We are unpersuaded.

Although defendant did not argue at the suppression hearing that the search failed to satisfy the "unforeseeable and spontaneous" requirement, the judge implicitly addressed the issue in finding that Clements smelled marijuana coming from the vehicle pursuant to a roadside stop initiated by a reasonable articulable suspicion of a motor vehicle violation.

In <u>Witt</u>, our Supreme Court abandoned the exigent-circumstances standard for warrantless searches of automobiles set forth in <u>State v. Cooke</u>, 163 N.J. 657 (2000), and <u>State v. Pena-Flores</u>, 198 N.J. 6 (2009), in favor of returning to the exigency test established in <u>State v. Alston</u>, 88 N.J. 211 (1981). 223 N.J. at 450. The <u>Alston</u> test, revived in <u>Witt</u>, "requires the State to prove that probable cause to believe the vehicle contains contraband or other evidence of unlawful activity arose spontaneously and unforeseeably." <u>State v. Courtney</u>, ___ N.J. Super. ___, ___ (App. Div. 2024) (slip op. at 11).

<u>Witt</u> imposed another precondition—this one based on the "inherent exigency" arising during roadside encounters. 223 N.J. at 448-49 (quoting <u>Pena-Flores</u>, 198 N.J. at 39 n.1). Consequently, a warrantless roadside search of a vehicle is permissible under the automobile exception articulated in <u>Alston</u> and <u>Witt</u> where "the circumstances giving rise to probable cause [are] unforeseeable and spontaneous" and the probable cause did not exist "well in advance of" the search. <u>State v. Smart</u>, 253 N.J. 156, 173-74 (2023). When the <u>Alston/Witt</u> test

is satisfied, the officer has the discretion to proceed with a warrantless roadside search or impound the vehicle and secure a warrant. See Courtney, ___ N.J. Super. at ___ (slip op. at 13); State v. Rodriguez, 459 N.J. Super. 13, 15 (App. Div. 2019).

At the time of defendant's arrest, an officer detecting the smell of marijuana during a routine traffic stop was a common example of probable cause to search an automobile arising in an unforeseeable and spontaneous fashion. See Witt, 223 N.J. at 432 (generating the hypothetical scenario for the purpose of illustrating the spontaneous and unforeseeable element); see also Rodriguez, 459 N.J. Super. at 16-19, 25 (finding probable cause to search driver's vehicle for marijuana, established by officer's observation of marijuana smell and small pieces on front seat, arose in an unforeseeable and spontaneous fashion because observations were made during a roadside stop for routine motor vehicle violations).

We are satisfied that the finding of probable cause here, predicated on marijuana odor detected during a traffic stop, after a total of approximately eight minutes of interaction at defendant's driver-side window, arose in unforeseeable and spontaneous circumstances. See Smart, 253 N.J. at 172-73 (finding "the circumstances giving rise to probable cause were not 'unforeseeable or spontaneous'" because officers reasonably expected they would find drugs in the

A-2800-21

vehicle prior to stopping the car, based on nearly two hours of police investigation into "long-held information" from an informant that the car was used for drug trafficking).

However, defendant contends Clements possessed probable cause "well in advance" of the search, requiring officers to obtain a warrant as articulated in Witt. We disagree.

Guided by language in Witt and State v. Smart, 473 N.J. Super. 87 (App. Div. 2022), aff'd, 253 N.J. 156 (2023), we discern that an officer "possesse[s] probable cause well in advance of an automobile search" when the probable cause preceded the stop and securing a warrant was practicable. See Witt, 223 N.J. at 431, 447-48 ("[I]f a police officer has probable cause to search a car and is looking for that car, then it is reasonable to expect the officer to secure a warrant if it is practicable to do so."); Smart, 473 N.J. Super. at 91 (affirming the "police could not have secured a warrant before the car was stopped and, in that sense, did not 'sit' on probable cause").

Defendant asserts that probable cause did not arise in unforeseeable and spontaneous circumstances because the entire encounter at issue here—from Clements witnessing defendant making an illegal U-turn to Clements concluding his search of the vehicle—consisted of two "stops." Assuming the probable cause to search the vehicle arose unforeseeably and spontaneously "at the outset

of the stop," defendant maintains the "first stop" concluded upon completion of the tasks tied to the investigation of the traffic violation—defendant's return to the squad car after the belongings from his pockets were given to Hannah. Therefore, defendant contends Clements already possessed probable cause for approximately twenty minutes at the inception of the "second stop," and consequently Clements had to secure a warrant because he "sat on probable cause" and later conducted a warrantless search.

Defendant's contention is unavailing. Clements obtained probable cause to search the vehicle when he spontaneously and unforeseeably smelled marijuana coming from the SUV during the traffic stop. Although the "objective" of the initial traffic stop was accomplished when defendant was placed in the squad car, the stop did not conclude. The officers were actively confirming a second warrant, and Clements now smelled the strong odor of raw marijuana on defendant's person as they sat together in the car.

Law enforcement may investigate suspicion of a crime unrelated to the original traffic offense as a single stop. As our Supreme Court has stated:

> [A] police officer may make "ordinary inquiries incident to [the traffic] stop," such as "checking the driver's license," verifying whether the driver has any outstanding warrants, "and inspecting the automobile's registration and proof of insurance[.]" And if, as a result of the initial stop or further inquiries, "the circumstances 'give rise to suspicions unrelated to the

> traffic offense, an officer may broaden [the] inquiry and satisfy those suspicions.'"

> [State v. Dunbar, 229 N.J. 521, 533 (2017) (all but first and third alterations in original) (citations omitted).]

Since Clements did not smell marijuana coming from the vehicle until he had already effectuated the singular stop, he did not possess probable cause "well in advance" of the search. And the discovery of the second warrant and new smell emanating from defendant's person permitted him to continue the investigation. As soon as Clements confirmed the legality of the vehicle search with his superior officer, he undertook the search.

According to the BWC footage, there was three minutes and twenty-two seconds between the time defendant was placed in the patrol car, leading to the development of probable cause, and the initiation of the search. During that time, Clements separately consulted with two sources to confirm the lawfulness of the search. We are satisfied the three-minute-and-twenty-two-second continued detention of defendant (who was already in custody and under arrest), for the purpose of confirming the lawfulness of a search, did not unreasonably intrude on defendant's Fourth Amendment right to privacy. There was no delay in the process as the events unfolded.

Judge D'Arrigo did not err in concluding that the search fell within the automobile exception and that the search was performed within a reasonable

amount of time from the establishment of probable cause. The judge's determination to deny the suppression motion is supported by the evidence in the record and the applicable legal principles.

To the extent we have not commented on them specifically, all other arguments defendant raises on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2800-21